LULA SANDERS, CYNTHIA EURE, ANGELINE McINERNY, JOSEPH C. MOBLEY, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, PLAINTIFFS v. STATE PERSONNEL COMMISSION, A BODY POLITIC; OFFICE OF STATE PERSONNEL, A BODY POLITIC; THOMAS H. WRIGHT, STATE PERSONNEL DIRECTOR (IN HIS OFFICIAL CAPACITY); TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE; MICHAEL WILLIAMSON, DIRECTOR OF THE RETIREMENT SYSTEM DIVISION AND DEPUTY TREASURER OF THE STATE OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); RICHARD H. MOORE, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES OF THE RETIREMENT SYSTEM (IN HIS OFFICIAL CAPACITY); TEMPORARY SOLUTIONS, A SUBDIVISION OF THE OFFICE OF STATE PERSONNEL, AND STATE OF NORTH CAROLINA, DEFENDANTS

No. COA06-149

(Filed 1 May 2007)

### 1. Immunity— sovereign—state constitutional claim—not a defense

Sovereign immunity is not available as a defense to a claim brought directly under the state constitution. The dismissal of the constitutional claims of temporary state employees who were denied benefits was reversed to the extent that they were based on sovereign immunity.

### 2. Immunity— sovereign—breach of contract—temporary workers—implied consent

The trial court erred by granting defendants' motion to dismiss based on sovereign immunity where temporary state employees brought breach of contract claims for benefits allegedly due under state regulations. The allegations are materially indistinguishable from those found sufficient in several opinions; defendant's argument that the alleged contracts were implied, imaginary, and not authorized went to the merits of the breach of contract claim, which are not in issue when considering a motion to dismiss based on sovereign immunity.

### 3. Immunity— sovereign—administrative regulation—not implied waiver

An administrative regulation concerning the length of temporary state employment and the provision of benefits did not constitute an implied waiver of sovereign immunity. Allowing the executive branch's adoption of regulations to imply a waiver of sovereign immunity would be to allow the executive branch to authorize suit against the state, contrary to the long-standing principle that the General Assembly determines when the State may be sued.

Appeal by plaintiffs from order entered 22 September 2005 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 13 September 2006.

*Kilpatrick Stockton LLP, by Gregg E. McDougal, David C. Lindsay, Robert G. Hensley, Jr., Jim Kelly, and Adam Charnes, and North Carolina Justice Center, by Jack Holtzman, for plaintiffs-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell and Special Deputy Attorney General Lars F. Nance, for defendants-appellees.*

*State Employees Association of North Carolina, Inc., by Thomas A. Harris, General Counsel, for Amicus Curiae State Employees Association of North Carolina.*

GEER, Judge.

Plaintiffs, who worked for the State for more than 12 months as "temporary" employees, assert that they have been wrongfully denied employment benefits and seek relief under the state constitution, for breach of contract, and under 25 N.C. Admin. Code 1C.0405 (2006). The trial court allowed defendants' motion to dismiss under Rule 12(b)(1) of the Rules of Civil Procedure, concluding that each of the claims was barred by sovereign immunity. Because sovereign immunity does not preclude claims under the state constitution and for breach of contract, we reverse the order as to those two claims. We hold that there has been no waiver of sovereign immunity with respect to the cause of action based on the administrative regulation and, therefore, affirm the superior court's order as to that claim.

---

The named plaintiffs are individuals who have worked for state agencies under the classification of "temporary" employee for periods exceeding 12 months.[1] Defendants in this action are state administrative subdivisions, certain state officials, and the State itself. Plaintiffs contend that their extended employment in "temporary" posts has given rise to a right to the status and benefits of permanent state employees. According to plaintiffs, they have been unlawfully denied the leave, service credit, retirement benefits, and health insurance benefits accorded to permanent employees of the State in violation of (1) 25 N.C. Admin. Code 1C.0405, a regulation promulgated by

---

1. Although plaintiffs seek to represent a class of state workers similarly situated, class certification has not yet been granted.

the State Personnel Commission; (2) their contracts of employment with the State; and (3) article I, sections 1, 19, and 35, of the North Carolina Constitution.

On 22 July 2005, defendants filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure. The trial court entered an order on 22 September 2005 dismissing plaintiffs' claims "pursuant to N.C.G.S. 1A-1, Rule 12(b)(1) and/or (2), on the grounds of sovereign immunity." Plaintiffs timely appealed this order, arguing that the trial court erred in concluding that sovereign immunity shielded defendants from suit.

I

[1] Plaintiffs first contend that sovereign immunity is not available as a defense to their claims under the North Carolina Constitution, citing *Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied sub nom. Durham v. Corum*, 506 U.S. 985, 121 L. Ed. 2d 431, 113 S. Ct. 493 (1992). We agree.

In *Corum*, our Supreme Court specifically held: "The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights." *Id.* at 785-86, 413 S.E.2d at 291. The Court emphasized that "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Id.* at 786, 413 S.E.2d at 292.

Defendants, however, point to the statement in *Corum* that a direct claim under the state constitution is available only "in the absence of an adequate state remedy." *Id.* at 782, 413 S.E.2d at 289. Defendants argue that if an adequate state remedy exists, then a constitutional claim is barred by sovereign immunity. This Court has, however, previously rejected precisely this contention: "[O]ur Supreme Court in *Corum* never links sovereign immunity and causes of action under the North Carolina Constitution in the manner defendants presume." *McClennahan v. N.C. Sch. of the Arts*, 177 N.C. App. 806, 808, 630 S.E.2d 197, 199 (2006), *disc. review denied*, 361 N.C. 220, —— S.E.2d. —— (2007). As *McClennahan* holds, the defense of sovereign immunity is distinct from a defense asserting that a specific constitutional cause of action is barred by the existence of other adequate state remedies.

*Corum* involved two separate holdings: (1) a holding that a direct cause of action exists under the state constitution in the absence of

adequate alternative state remedies, and (2) a holding that such a constitutional cause of action is not barred by sovereign immunity. Thus, in arguing that adequate alternative remedies exist, the State is contending that no cause of action under the constitution is available. Such an argument could be the subject of a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6), but it does not involve a question of sovereign immunity.

In this case, the trial court dismissed the action purely on the grounds of sovereign immunity and declined to address defendants' motion to dismiss pursuant to Rule 12(b)(6). Since defendants did not cross-assign error with respect to the 12(b)(6) motion, the question of the availability of state constitutional claims is not before us. *See* N.C.R. App. P. 10(d) ("Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."); *Harllee v. Harllee*, 151 N.C. App. 40, 51, 565 S.E.2d 678, 685 (2002) ("In the instant case, the additional arguments raised in plaintiff-appellee's brief, if sustained, would provide an *alternative* basis for upholding the trial court's determination that the premarital agreement is invalid and unenforceable. However, plaintiff failed to cross-assign error pursuant to Rule 10(d) to the trial court's failure to render judgment on these alternative grounds. Therefore, plaintiff has not properly preserved for appellate review these alternative grounds.").

In sum, sovereign immunity is not available as a defense to a claim brought directly under the state constitution. We, therefore, reverse the trial court's order to the extent it dismissed plaintiffs' constitutional claims based on sovereign immunity. *See also Peverall v. County of Alamance*, 154 N.C. App. 426, 430, 573 S.E.2d 517, 519 (2002) ("It is well established that sovereign immunity does not protect the state or its counties against claims brought against them directly under the North Carolina Constitution."), *disc. review denied*, 356 N.C. 676, 577 S.E.2d 632 (2003).

II

[2] With respect to their breach of contract claim, plaintiffs rely upon *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976), in which the Supreme Court held: "[W]henever the State of North Carolina, through its authorized officers and agencies, enters into a

valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." Defendants, however, argue that plaintiffs' claim for relief based on a breach of contract cannot overcome sovereign immunity, as held by *Smith*, because the alleged contract is "implied," "imaginary," and in no way "an authorized and valid contract." We disagree.

With respect to a motion to dismiss based on sovereign immunity, the question is whether the complaint " 'specifically allege[s] a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action.' " *Fabrikant v. Currituck County*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005) (quoting *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (internal citations omitted), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003)). *Fabrikant* explains further that "precise language alleging that the State has waived the defense of sovereign immunity is not necessary," but, rather, the complaint need only "contain[] sufficient allegations to provide a reasonable forecast of waiver." *Id.*

In this case, the sole material before this Court is plaintiffs' amended complaint. The question is, therefore, whether that complaint contains sufficient allegations to support a finding of waiver of sovereign immunity. In the amended complaint, plaintiffs allege that the State entered into employment contracts with the plaintiffs, incorporating state personnel regulations, pursuant to which they were entitled to certain benefits as a result of their employment for more than 12 months. These allegations are materially indistinguishable from those found·sufficient in several opinions of this Court to survive claims of sovereign immunity.

In *Peverall*, the plaintiff "alleged that defendant breached its employment contract by denying plaintiff the disability retirement benefits it agreed to provide in exchange for five years of continuous service when plaintiff originally contracted for employment with defendant." 154 N.C. App. at 430, 573 S.E.2d at 520. This Court relied upon *Smith* and held: "Because defendant does not enjoy immunity from suits arising from damages incurred due to breach of contract, we reject defendant's argument that the trial court should have dismissed this claim based on sovereign immunity." *Id.* at 431, 573 S.E.2d at 520.

Likewise, in *Hubbard v. County of Cumberland*, 143 N.C. App. 149, 150-51, 544 S.E.2d 587, 589, *disc. review denied*, 354 N.C. 69, 553 S.E.2d 40 (2001), the plaintiffs (deputy sheriffs) "alleged that defend-

ants had manipulated and otherwise improperly administered the [county's] longevity pay plan such that plaintiffs were wrongfully deprived of rightfully earned compensation." This Court observed that the defendant county had a statutory duty to provide salaries to which it had committed itself and that those salaries provided the necessary consideration for the deputy sheriffs' employment contracts. *Id.* at 153, 544 S.E.2d at 590. The Court then concluded that "[d]efendant County, after having availed itself of the services provided by the law enforcement officers, may not claim sovereign immunity as a defense to its statutory and contractual commitment." *Id.* at 153-54, 544 S.E.2d at 590.

The *Peverall* and *Hubbard* factual contentions parallel those in this case. Plaintiffs allege that defendants are manipulating State personnel policies and benefit plans, which govern the terms of state employment, to avoid providing plaintiffs benefits that they rightfully earned as a result of the tenure of their employment. Plaintiffs' complaint sufficiently alleges that defendants accepted plaintiffs' services and, therefore, "may not claim sovereign immunity as a defense" to their alleged commitment to provide the benefits provided by the personnel policies setting forth the terms of employment. *Id.* at 154, 544 S.E.2d at 590.

Defendants' argument that the alleged contract is "imaginary" and not "an authorized and valid contract" goes to the merits of plaintiffs' breach of contract claim. This Court has previously pointed out, in considering the applicability of sovereign immunity to allegations of breach of a governmental employment contract, "that we are not now concerned with the merits of plaintiffs' contract action. . . . [W]hether plaintiffs are ultimately entitled to relief are questions not properly before us." *Archer v. Rockingham County*, 144 N.C. App. 550, 558, 548 S.E.2d 788, 793 (2001), *disc. review denied*, 355 N.C. 210, 559 S.E.2d 796 (2002). *See also Smith*, 289 N.C. at 322, 222 S.E.2d at 424 ("We are not now concerned with the merits of the controversy. . . . We have no knowledge, opinion, or notion as to what the true facts are. These must be established at the trial. Today we decide only that plaintiff is not to be denied his day in court because his contract was with the State.").

*Archer* also addresses defendants' contention that any contract was only "implied" and, therefore, no waiver of sovereign immunity has occurred. In *Archer*, the plaintiffs alleged that they were wrongfully deprived of overtime and underpaid compensatory time. In hold-

SANDERS v. STATE PERSONNEL COMM'N

[183 N.C. App. 15 (2007)]

ing that plaintiffs' breach of contract claims were not barred by sovereign immunity, this Court reasoned:

> "[T]he existence of the relation of employer and employee ... is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied." *Hollowell v. Department of Conservation and Development*, 206 N.C. 206, 208, 173 S.E. 603, 604 (1934). Guided by this principle, as well as the reasoning in *Smith*, we hold that the County may not assert the defense of sovereign immunity in this case .... We agree with plaintiffs' assertion that the employment arrangement between the County and plaintiffs was contractual in nature, although the contract was implied. Employment contracts may be express or implied. An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding. ... We do not limit *Smith* to written contracts; its reasoning is equally sound when applied to implied oral contracts.

*Archer*, 144 N.C. App. at 557, 548 S.E.2d at 792-93. The Court further held that plaintiffs could assert their claims because they were "in the nature of a contractual obligation." *Id.*, 548 S.E.2d at 793. In short, even if the existence of a contract must be implied from the circumstances and relationship between the parties, the analysis of *Smith* still applies.

Defendants, however, point to *Whitfield v. Gilchrist*, 348 N.C. 39, 497 S.E.2d 412 (1998), as holding otherwise. In *Whitfield*, our Supreme Court concluded that "sovereign immunity bars recovery on the basis of *quantum meruit* in an action against the State upon a quasi contract or contract implied in law." *Id.* at 42, 497 S.E.2d at 414. As that decision noted, " '[a] quasi contract or a contract implied in law is not a contract.' " *Id.*, 497 S.E.2d at 415 (quoting *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)). *See also Thompson-Arthur Paving Co. v. Lincoln Battleground Assocs., Ltd.*, 95 N.C. App. 270, 280, 382 S.E.2d 817, 823 (1989) (discussing difference between implied-in-fact contract, which "is an agreement between parties," and implied-in-law contract, which "is not based on some actual agreement between the parties, but is a contract implied by law to prevent the unjust enrichment of a party").

Defendants have confused contracts implied from the facts—which, as *Archer* establishes, involve actual contracts—with contracts implied in law, which do not involve a contract. Because plain-

tiffs do not seek to recover in *quantum meruit* upon an implied-in-law contract, but instead have alleged the breach of an actual employment contract, *Whitfield* is inapposite. *Compare Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 643, 599 S.E.2d 410, 412 (2004) ("dismissal of the *quantum meruit* claim was . . . appropriate because such a claim when brought against an arm of the State is barred by sovereign immunity), *disc. review denied*, 359 N.C. 410, 612 S.E.2d 318, *aff'd per curiam*, 360 N.C. 167, 622 S.E.2d 495 (2005).

Indeed, there is no dispute that plaintiffs were validly employed by the State. Rather, the dispute between the parties concerns only the actual terms of their contracts. Under *Smith*, because the State entered into a contract of employment with plaintiffs, it now "occup[ies] the same position as any other litigant." 289 N.C. at 320, 222 S.E.2d at 424. Accordingly, plaintiffs should "not . . . be denied [their] day in court" regarding the terms of their employment contract simply "because [their] contract was with the State." *Id.* at 322, 222 S.E.2d at 424.

Defendants also argue that this case falls within the limitation to *Smith* recognized in *Middlesex Constr. Corp. v. State*, 307 N.C. 569, 299 S.E.2d 640 (1983). Our Supreme Court held in *Middlesex* that "the *Smith* decision was not intended to modify the express language of prior statutory enactments providing limited waiver of sovereign immunity in contract actions against the State . . . ." *Id.* at 574, 299 S.E.2d at 643. The Court added: "We hold that with respect to that class of cases for which *statutory relief* had been provided prior to *Smith*, it is for the General Assembly to determine when and under what circumstances the State may be sued." *Id.* at 575, 299 S.E.2d at 643 (emphasis added) (internal quotation marks omitted).

In contrast to the circumstances of *Middlesex*, this case does not present a situation in which the State has by statute waived sovereign immunity for a specific type of claim, but set forth procedural requirements as conditions precedent to any lawsuit. Defendants have pointed to no statute specifically affording plaintiffs relief for their breach of contract claims, but rather refer only to generalized statutory and administrative provisions allowing for declaratory—but not monetary or injunctive—relief from administrative agencies. *Middlesex* thus has no application to plaintiffs' claims in this case. *See Southern Furniture Co. of Conover, Inc. v. Dep't of Transp.*, 122 N.C. App. 113, 115-16, 468 S.E.2d 523, 525 (1996) (holding that *Smith* rather than *Middlesex* applied when statute cited by State did "not provide a procedure for plaintiff's breach of contract claim and

defendant . . . cited no other statutory procedure which would control plaintiff's breach of contract action"), *disc. review improvidently allowed*, 346 N.C. 169, 484 S.E.2d 552 (1997).

*Smith*, *Peverall*, *Hubbard*, and *Archer* provide the controlling authority in this case. Under those decisions, the trial court erred in dismissing plaintiffs' breach of contract claims based on sovereign immunity.

### III

[3] Finally, we consider plaintiffs' claim for relief based on a regulation of the State Personnel Commission, which is the body responsible for "establish[ing] policies and rules" relating to, *inter alia*, position classification, compensation, qualification requirements, and holiday, vacation, and sick leave. N.C. Gen. Stat. § 126-4 (2005). The regulation at issue, 25 N.C. Admin. Code 1C.0405, provides:

> (a) A temporary appointment is an appointment for a limited term, normally not to exceed three to six months, to a permanent or temporary position. Upon request, the Office of State Personnel shall approve a longer period of time; but in no case shall the temporary employment period exceed 12 consecutive months. (Exceptions for students and retired employees: Students are exempt from the 12-months maximum limit. If retired employees sign a statement that they are not available for nor seeking permanent employment, they may have temporary appointments for more than 12 months. "Retired" is defined as drawing a retirement income and social security benefits.)

> (b) Employees with a temporary appointment do not earn leave, or receive total state service credit, health benefits, retirement credit, severance pay, or priority reemployment consideration.

Plaintiffs focus on the statement that "in no case shall the temporary employment period exceed 12 consecutive months" and construe that provision as requiring the State to extend the benefits and status of permanent employment to employees who work longer than 12 months in a particular position. Plaintiffs are asserting an implied right of action under the regulation.

For purposes of overcoming the State's sovereign immunity defense with respect to this claim, plaintiffs rely upon *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 655, 435 S.E.2d 309, 313 (1993). The plain-

tiffs in *Ferrell* had brought their action pursuant to N.C. Gen. Stat. § 136-19 (1986), which granted them a right to repurchase land previously taken by the Department of Transportation ("DOT") through eminent domain. After noting that "[o]ther jurisdictions have also found that *statutory schemes* conferring rights to citizens imply a waiver of sovereign immunity," the Court held that DOT was not shielded from suit in this instance because "the legislature ha[d] implicitly waived the DOT's sovereign immunity to the extent of the rights afforded in N.C.G.S. § 136-19 (1986)." *Id.* (emphasis added). *See also Bell Arthur Water Corp. v. N.C. Dep't of Transp.*, 101 N.C. App. 305, 310, 399 S.E.2d 353, 356 (holding that a statute requiring DOT to pay certain costs of water and sewer line relocation "logically implies waiver of sovereign immunity as to those costs the [DOT] is obligated to pay"), *disc. review denied*, 328 N.C. 569, 403 S.E.2d 507 (1991).

Although plaintiffs in this case assert that 25 N.C. Admin. Code 1C.0405 belongs to a "statutory and regulatory scheme," they do not identify any statutory provision that would support an implied waiver of sovereign immunity. Plaintiffs are instead asking this Court to extend the *Ferrell* implied waiver—based on statutory rights—to regulations setting forth rights. Plaintiffs do not cite any authority from this or any other jurisdiction suggesting that a waiver may be implied from the text of an administrative rule or regulation, and we have found none.

If we were to hold, as plaintiffs request, that the Executive Branch's adoption of regulations bestowing rights on certain parties constitutes an implied waiver of sovereign immunity, we would in essence be allowing the Executive Branch to authorize suit against the State. To do so would be inconsistent with the well-established principle that "[i]t is for the General Assembly to determine when and under what circumstances the State may be sued." *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 795 (1961). We, therefore, hold that 25 N.C. Admin. Code 1C.0405 does not give rise to an implied waiver of sovereign immunity for purposes of plaintiffs' direct claim under that regulation.

## Conclusion

We affirm the trial court's order dismissing plaintiffs' first claim for relief (for violation of 25 N.C. Admin. Code 1C.0405) based on sovereign immunity. We reverse that order as to plaintiffs' second, third, and fourth claims for relief alleging breach of contract and violations of the North Carolina Constitution.

Affirmed in part; reversed in part.

Judges CALABRIA and JACKSON concur.