STEPHENS, Judge.
*37 I. Factual Background and Procedural History
Plaintiff Henry Frazier, III, was employed at North Carolina Central University ("NCCU") as head football coach pursuant to a contract for a five-year period, beginning 1 January 2011 and continuing through 31 December 2015. The terms of Frazier's contract provided that his position was "designated as employment at will and therefore governed by the common law of the State of North Carolina and not by any statutory SPA [State Personnel Act] or EPA [Exempt Personnel Act] policies or procedures." The contract further provided that NCCU could terminate Frazier's employment for just cause, which was defined in pertinent part to include
[a]ny conduct by [Frazier] which constitutes moral turpitude, which would constitute a criminal offense under *38 North Carolina law, or which would tend to bring public disrespect, contempt or ridicule upon [NCCU]. Any discipline under this subsection shall not violate the due process rights of [Frazier] to defend himself against false and/or malicious prosecution or accusations[.]
In the event of any disciplinary action against Frazier, section 3.2 of the contract required NCCU's Director of Athletics to give him notice of and an opportunity to respond to any allegations against him, as well as written notice of any subsequent disciplinary decisions and the right to request a review of such decisions by NCCU's Chancellor.
On 14 May 2012, Frazier was arrested and charged with misdemeanor assault on a female following a domestic incident involving his spouse, and a protective order was entered *517 against him. Frazier was initially placed on administrative leave from NCCU. After entering into a deferred prosecution agreement with the Wake County District Attorney, Frazier was allowed to return to his position at NCCU provided he fully comply with the conditions of his prayer for judgment. At that time, NCCU's Chancellor issued Frazier a formal letter of reprimand and notified him that any additional incidents of this kind would be cause for more severe disciplinary actions, up to and including dismissal.
On 19 August 2013, Frazier was arrested for violating the aforementioned protective order. That same day, NCCU's Director of Athletics, Dr. Ingrid Wicker-McCree notified Frazier by letter that he was suspended with full pay while NCCU collected additional information regarding his arrest. On 22 August 2013, after meeting with Frazier and providing him an opportunity to respond to the allegations against him, Wicker-McCree notified Frazier by letter of her decision to terminate his employment. In her letter, Wicker-McCree explained:
It is my intent to discharge you for behavior that has brought public disrespect, contempt and ridicule upon [NCCU], the Department of Intercollegiate Athletics and the football program....
....
During our meeting, you provided me with your position regarding your performance as Head Coach and outlined your achievements to date. You also indicated that while you understood [NCCU's] concerns regarding these matters, you did not believe that these issues have had a negative impact on your job performance or your ability to lead *39 the program. During our discussion, it became clear to me that you did not have an appreciation of the impact these types of behaviors, your arrest and the resulting negative publicity can and have had on our student athletes, the program and [NCCU]. This was especially disturbing, in light of the fact that you were severely reprimanded for similar behaviors in July 2012. Your recent arrest for violation of a domestic protective order, stemming from your May 2012 arrest, ... has once again generated local, regional and national media stories and opinions that have harmed the reputation of [NCCU] and our athletics program.
Frazier's contract expressly provided that he had the right to appeal any decision by the Director of Athletics to take disciplinary action against him to NCCU's Chancellor. On 29 August 2013, Frazier's New York-licensed attorney, Linda Kenney Baden, sent a letter to NCCU Chancellor Debra Saunders-White appealing Wicker-McCree's decision. In a letter dated 25 September 2013, Saunders-White informed Frazier that she had considered his request for reinstatement but ultimately concluded-in light of his previous arrest in May 2012, the resulting deferred prosecution and letter of reprimand from NCCU's former Chancellor, and Frazier's "current arrest, and blatant disregard for [NCCU] directives [, which] are inconsistent with the position as Head Coach, a position charged with modeling behaviors for students"-that "there is sufficient basis to support your for cause termination" and therefore upheld Wicker-McCree's decision.
On 30 September 2013, Frazier was acquitted of the charges that led to his most recent arrest. On 1 October 2013, Frazier's attorney, Kenney Baden, sent a letter to NCCU's general counsel, Melissa Jackson Holloway, requesting that NCCU reconsider its decision to terminate her client's employment, and inquiring whether Frazier was required to complete any further internal or more formal appeals process "before legal action ensues." In a letter dated 11 October 2013, Jackson Holloway confirmed that "[i]t is [NCCU's] position that Coach Frazier has exhausted his campus based appeals rights" and also stated that the terms of Frazier's contract precluded him "from pursuing avenues of appeal/review provided for in the State Personnel Act (governing SPA employees) and/or the NCCU EPA non faculty employment policies (governing EPA non faculty employees) including, but not limited to, a review of the termination decision by the NCCU Board of Trustees...." However, Jackson Holloway also cautioned Frazier's attorney that
*518 *40 given my role as counsel to [NCCU], I am not in the position to identify all of the claims that you believe your client may have against [NCCU] and/or its representatives or to identify every potential statutory or other requirement to pursue such claims. I would respectfully suggest that you obtain NC local counsel to ensure your understanding of state contract law, the North Carolina Tort Claims Act and other relevant statutes, case law and other authority applicable to any claims your client may have.
On 8 April 2014, after hiring a North Carolina-licensed attorney, Frazier filed a complaint in Durham County Superior Court against NCCU and the Board of Governors of the University of North Carolina seeking compensatory and punitive damages for breach of contract, wrongful discharge in violation of public policy, and breach of the covenant of good faith and fair dealing. With NCCU's consent, Frazier subsequently amended his complaint three times in order to attach an accurate copy of his contract and correct certain typographical errors.
On 5 June 2014, NCCU filed a motion to dismiss all of Frazier's claims pursuant to Rule 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure based on sovereign immunity, lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, given the fact that Frazier failed to exhaust his administrative remedies under our State's Administrative Procedure Act ("APA") and also failed to allege in any of his complaints that the available administrative procedures and remedies were inadequate. The trial court held a hearing on this motion on 12 August 2014, and on 25 August 2014, it entered an order granting NCCU's motion and dismissing Frazier's claims with prejudice. On 22 September 2014, Frazier gave notice of appeal to this Court.
II. Analysis
Frazier argues that by terminating his employment before he had the opportunity to defend himself in court, NCCU violated his contractual right to due process. However, the scope of our review in the present case focuses not on the merits of Frazier's claim but instead on the threshold issue of whether the trial court erred in granting NCCU's motion to dismiss. On that point, Frazier argues that the trial court erred in dismissing his complaint because: (1) his contract did not require him to exhaust administrative remedies available under the APA; (2) NCCU waived its sovereign immunity by entering into the contract with him; and (3) by pleading all the elements of a claim for breach of contract, his *41 complaint adequately alleged that any available administrative remedies were inadequate. We disagree.
A. Background Law
This Court's standard of review for a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(1) is de novo. See Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C.App. 231, 238, 563 S.E.2d 269, 274 (2002).
A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be raised at any time. Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy. An action is properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies. Where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts.
Hentz v. Asheville City Bd. of Educ., 189 N.C.App. 520, 522, 658 S.E.2d 520, 521-22 (2008) (citations, internal quotation marks, and brackets omitted). Thus, "[a]n action is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies." Johnson v. Univ. of N.C., 202 N.C.App. 355, 357, 688 S.E.2d 546, 548 (2010) (citation omitted).
It is well established that the actions of the University of North Carolina ("the University") and its constituent institutions-which include NCCU, see N.C. Gen.Stat. § 116-4 (2013)-are "specifically made subject to the judicial review procedures" provided by N.C. Gen.Stat. § 150B-43. Huang v. N.C. State *519 Univ., 107 N.C.App. 710, 713, 421 S.E.2d 812, 814 (1992). Section 150B-43 of our General Statutes provides in pertinent part that, "[a]ny party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision[.]" N.C. Gen.Stat. § 150B-43 (2013). To obtain judicial review of a final decision, the person aggrieved by the decision must file a petition in the superior court of the county where that person resides within 30 days after being served with a written copy of the final decision. N.C. Gen.Stat. § 150B-45 (2013). The petition "shall explicitly state what exceptions are taken to the decision or procedure and what relief the petitioner seeks." N.C. Gen.Stat. § 150B-46 (2013). In reviewing a final decision, the superior court
*42 may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence ... in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.
N.C. Gen.Stat. § 150B-51(b) (2013). This Court's prior holdings amply demonstrate that a trial court lacks subject matter jurisdiction to hear an action challenging a final decision by the University unless the plaintiff has exhausted all available administrative remedies, including seeking judicial review pursuant to section 150B-43, or his complaint alleges the administrative remedies available to him are inadequate. Huang, 107 N.C.App. at 715-16, 421 S.E.2d at 815-16.
In Huang, for example, the plaintiff had been terminated from his position as a tenured professor at N.C. State University ("NCSU") after he was arrested for attempted rape. Id. at 711-12, 421 S.E.2d at 813-14. As provided by the administrative remedies made available to him by the Code of the Board of Governors of the University, Huang had sought a hearing from NCSU's Faculty Hearing Committee, which ultimately recommended his discharge. Id. at 712, 421 S.E.2d at 813. Thereafter, Huang appealed the termination decision to NCSU's Board of Governors, which agreed to hear certain portions of his petition. Id. However, while that appeal was still pending, Huang filed a complaint in superior court seeking compensatory and punitive damages against NCSU and requesting a jury trial for, inter alia, breach of contract. Id. at 712, 421 S.E.2d at 814. After Huang was granted summary judgment on his breach of contract claim, NCSU appealed to this Court arguing that the trial court lacked jurisdiction to hear the action because Huang had failed to exhaust his administrative remedies before filing his claim. Id. For his part, Huang argued that he had exhausted his administrative remedies "because [NCSU's] Board [of Governors] had reached its final *43 decision [on his appeal] prior to the time summary judgment was actually granted by the trial court." Id. Alternatively, Huang argued that he was free to file his breach of contract claim against NCSU directly in the superior court without exhausting administrative remedies "because administrative action could not grant him the relief to which he is allegedly entitled." Id.
On appeal, we first explained that "[b]ecause no statutory administrative remedies are made available to employees of the University, those who have grievances with the University have available only those administrative remedies provided by the rules and regulations of the University and must exhaust those remedies before having access to the courts." Id. at 713-14, 421 S.E.2d at 814. "Therefore, before a party may ask the courts for relief from a University decision: (1) the person must be aggrieved; (2) there must be a contested case; and (3) the administrative remedies provided by the University must be exhausted." Id. at 714, 421 S.E.2d at 814. We ultimately concluded that because Huang filed his action in superior court *520 while his appeal to NCSU's Board of Governors remained pending, "Huang did not exhaust his University remedies prior to filing his claim in superior court and the court therefore did not have jurisdiction." Id. at 714, 421 S.E.2d at 815. In so holding, we rejected Huang's argument that his premature filing in superior court was "cured" by the fact that NCSU's Board of Governors rendered a decision on his appeal before the trial court entered summary judgment. We explained: "To adopt Huang's contention would make it impossible for the trial court to perform its function of reviewing the administrative proceedings based on the completed administrative record." Id. (emphasis added). We then emphasized the various ways that the proceedings on Huang's claim in the trial court had diverged from the review process mandated by section 150B-43 :
The trial court did not have before it the complete administrative record, as required by [section] 150B-47. Indeed[,] the trial court conducted a de novo hearing, not a review of the record of the agency proceedings. This is so even though the trial court was made aware of the Board's decision prior to entering summary judgment. Furthermore, Huang filed a complaint in superior court seeking compensatory and punitive damages. The correct procedure for seeking review of an administrative decision is to file a petition in the court explicitly stating what exceptions are taken to the administrative decision. This judicial review is to be conducted without a jury. Huang specifically requested a jury trial.
*44 Id. at 714-15, 421 S.E. 2d at 815 (citations, internal quotation marks, and brackets omitted). Moreover, in explaining the rationale behind our holding that Huang's breach of contract claim was barred by his failure to fully exhaust his available administrative remedies and his failure to file a petition for judicial review as required by section 150B-43, we observed that "the policy of requiring the exhaustion of administrative remedies prior to the filing of court actions does not require merely the initiation of prescribed administrative procedures, but that they should be pursued to their appropriate conclusion and their final outcome awaited before seeking judicial intervention [.]" Id. at 715, 421 S.E.2d at 815 (citation and internal quotation marks omitted).
We also rejected Huang's alternative argument that he was not required to exhaust his administrative remedies before filing an action in superior court because the only administrative remedies available to him were inadequate. Id. at 716, 421 S.E.2d at 816. While acknowledging that "exhaustion of administrative remedies is not required when the only remedies available from the agency are shown to be inadequate," we made clear that "[t]he burden of showing the inadequacy of the administrative remedy is on the party claiming the inadequacy, and the party making such a claim must include such allegation in the complaint," which we noted "should be carefully scrutinized to ensure that the claim for relief is not inserted for the sole purpose of avoiding the exhaustion rule." Id. at 715, 421 S.E.2d at 815-16 (citations, internal quotation marks, and brackets omitted). Thus, although Huang argued on appeal to this Court that his available administrative remedies "[did] not provide him an opportunity for monetary relief to the same degree requested in the complaint," which sought compensatory and punitive damages for breach of contract, we held-based on our examination of his complaint and the record before the trial court, neither of which specifically alleged the inadequacy of his available administrative remedies-that Huang had failed to properly raise the alleged inadequacy issue and that his complaint therefore should have been dismissed for this reason as well. Id. at 716, 421 S.E.2d at 816.
In cases since Huang, this Court has consistently and repeatedly held that a trial court lacks jurisdiction to hear breach of contract claims brought by University employees who failed to first exhaust their administrative remedies, including petitioning for judicial review pursuant to section 150B-43. See, e.g., Tucker v. Fayetteville State Univ., --- N.C.App. ----, ----, 767 S.E.2d 60, 63 (2014) (holding that the trial court lacked subject matter jurisdiction over a former University basketball coach's complaint seeking compensatory damages for breach of contract where *45 the plaintiff failed to meet his *521 burden of showing that the administrative remedies available were inadequate, and where he also sought to avoid the exhaustion requirement by retiring upon being notified that grounds existed for his termination, thereby skipping the required internal administrative appeals procedures, and then filing suit in superior court instead), disc. review denied, - -- N.C. ----, 768 S.E.2d 854 (2015) ; Johnson, 202 N.C.App. at 359, 688 S.E.2d at 549 (holding that the trial court lacked subject matter jurisdiction to hear a complaint by an assistant University professor who failed to exhaust his available administrative remedies, and rejecting the professor's argument that he was not required to exhaust those remedies because the University's relevant policies provided that a faculty member "may"-rather than "shall"-appeal an adverse decision internally); Hentz, 189 N.C.App. at 523-24, 658 S.E.2d at 522-23 (holding based on Huang that the trial court lacked subject matter jurisdiction to hear a complaint against the city's board of education and school superintendent for, inter alia, breach of contract because the plaintiff filed suit in superior court while her administrative appeal was still pending and her complaint failed to allege that the available remedies were inadequate); see also Hedgepeth v. Winston-Salem State Univ., 231 N.C.App. 170, 753 S.E.2d 741 (2013) (unpublished), available at 2013 WL 6237445.[1]
B. Frazier's Appeal
In the present case, rather than filing a petition for judicial review of NCCU's decision to terminate his employment within 30 days of receiving the 11 October 2013 letter informing him that he had exhausted all on-campus appeal procedures, Frazier waited roughly six months and then filed the present lawsuit. During the hearing on NCCU's motion to dismiss and again in his brief to this Court, Frazier has raised several related arguments as to why his claims should be exempt from *46 the requirements of the APA and section 150B-43. We find none of them persuasive.
(1) Applicability of the APA to Frazier's employment contract
We turn first to Frazier's argument that the APA does not apply to his claims at all because his contract with NCCU prohibited the use of any statutory administrative procedures for resolving disputes between the parties. In support of this argument, Frazier notes that the dispute-resolution process outlined by section 3.2 of his contract makes no reference to the APA, and he also emphasizes the contract's express provision that his position was "designated as employment at will and therefore governed by the common law of the State of North Carolina and not by any statutory SPA or EPA policies or procedures." In Frazier's view, the fact that the 11 October 2013 letter confirmed that he had exhausted the internal appeal process required by his contract, and that his contract prevented him "from pursuing avenues of appeal/review provided for in the State Personnel Act," proves that there were no administrative procedures for him to utilize before filing a lawsuit.
This argument is unavailing. There is no dispute that NCCU is a member of the University system and therefore, as noted supra, the APA makes NCCU's actions subject to judicial review under section 150B-43. Nothing in Frazier's contract expressly purports to exempt him from the APA's procedures, and we do not believe the mere fact that the contract states that the EPA and SPA do not apply has any bearing on this *522 issue. In this Court's recent decision in Tucker, we construed a similar contractual provision that exempted the plaintiff University basketball coach from the SPA to mean that his position was subject to the University's internal grievance and dispute-resolution procedures, and not the statutory scheme outlined in chapter 126 of our General Statutes, where the SPA is codified. See Tucker, --- N.C.App. at ----, 767 S.E.2d at 62. We then concluded that "[o]nce [the] plaintiff completed that process, he would have been entitled to judicial review of the decision [to terminate his contract] pursuant to N.C. Gen.Stat. § 150B-43." Id. Similarly here, we construe the language Frazier highlights to mean that the procedure for disputing NCCU's decision to terminate his employment was controlled by section 3.2 of his contract, rather than the SPA or EPA. Our review of the record demonstrates that NCCU followed those procedures and also reveals, contrary to Frazier's characterization of the 11 October 2013 letter, that NCCU's general counsel explicitly warned Frazier's attorney that she was "not in the position to identify all of the claims that you believe your client may have against [NCCU] and/or its representatives or to identify every potential statutory or other requirement *47 to pursue such claims " before advising Frazier to obtain local counsel familiar with our State's laws. Given that neither the express language of Frazier's contract nor the 11 October 2013 letter suggested that the APA was inapplicable, and in light of well-established precedent, we conclude this argument is without merit.
(2) Frazier's failure to exhaust available administrative remedies
Frazier argues next that because NCCU waived its sovereign immunity by entering into a contract with him, he was not required to exhaust administrative remedies, and therefore the trial court erred in dismissing his claims. In support of this argument, Frazier relies on our Supreme Court's holding in Smith v. State, 289 N.C. 303, 222 S.E.2d 412 (1976), that "whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." Id. at 320, 222 S.E.2d at 423. Frazier concedes that the holding in Smith was restricted by our Supreme Court's subsequent holding in Middlesex Constr. Corp. v. State, 307 N.C. 569, 299 S.E.2d 640 (1983), rehearing denied, 310 N.C. 150, 312 S.E.2d 648 (1984), which confirmed that "under its limited terms, Smith permitted suits against the State where none could be brought otherwise," but also clarified that
[t]he Smith Court abolished sovereign immunity in only those cases where an administrative or judicial determination was not available. It did so by finding that the State had implicitly consented to be sued by entering into a valid contract. Unaffected by the decision were those contractual situations in which the State had waived its immunity by statute, thereby expressly consenting to suit.
Id. at 574-75, 299 S.E.2d at 643 (emphasis in original). As noted supra, our decision in Huang demonstrated that section 150B-43 functions as exactly the type of statutory waiver contemplated by Middlesex, and our decisions since Huang confirm that a University employee who fails to exhaust the administrative remedies that section 150B-43 provides is barred from bringing a subsequent, separate action in superior court for breach of contract. See, e.g., Tucker, --- N.C.App. at ----, 767 S.E.2d at 63 ; Johnson, 202 N.C.App. at 359, 688 S.E.2d at 549 ; Hentz, 189 N.C.App. at 523-24, 658 S.E.2d at 522-23 ; Hedgepeth, 2013 WL 6237445 at *4.
However, Frazier contends that Huang is obsolete and that this Court has long since abandoned its exhaustion requirement in circumstances like his, where a party seeks monetary damages for breach of *48 contract. Specifically, Frazier insists that the fact the APA does not provide for breach of contract damages means that judicial review under section 150B-43 is not an adequate remedy, which in Frazier's view means that he has not failed to exhaust his administrative remedies. In support of his argument, Frazier relies heavily on this Court's decision in Ware v. Fort, 124 N.C.App. 613, 478 S.E.2d 218 (1996), which he claims contradicted and abandoned Huang by holding that the proper *523 venue for a breach of contract claim is in superior court, rather than an APA proceeding.
There are several reasons why this argument fails. On the one hand, we note that our holding in Huang has never been overruled by our Supreme Court, and it is well established that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." In re Appeal from Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citations omitted). On the other hand, we find Frazier's reliance on Ware to be entirely misplaced. The plaintiff in Ware was a probationary professor at N.C. A & T State University who brought a claim under 42 U.S.C. § 1983 and a Corum claim under the North Carolina Constitution after his contract expired and he was not reappointed to the faculty. 124 N.C.App. at 614, 478 S.E.2d at 219. The trial court dismissed these claims, and we affirmed that dismissal because we found no basis for the alleged violation of the plaintiff's due process rights under either the United States Constitution or the North Carolina Constitution, and because "neither a [ section] 1983 claim, nor a Corum claim, will lie where no appropriate protected interest exists." Id. at 619, 478 S.E.2d at 222 (citation omitted). We further observed that
where adequate state remedies exist, no Corum claim will lie. The pleadings indicate that [the] plaintiff had a number of alternative state law remedies whereby he could have pursued the damages he seeks. [The p]laintiff could have sought judicial review of the final BOG decision under Chapter 150B of the [APA]. [The p]laintiff also could have sued the University for breach of contract, since the State implicitly consents to be sued for damages on the contract in the event it breaches the contract.
Id. (citations and internal quotation marks omitted). Despite Frazier's claims to the contrary, our decision in Ware did not purport to abandon, or even reference, Huang, nor did it posit any sort of general rule that suits for breach of contract damages are somehow exempt from the *49 APA's exhaustion requirement. Indeed, Ware had nothing to with the APA and, when viewed in its full context, it is abundantly clear that the single sentence Frazier's argument revolves around was stated, in dicta, as one alternative state law remedy the plaintiff could have pursued instead of filing a Corum claim. Moreover, to accept Frazier's contention that Huang is obsolete as a result of Ware would also require us to ignore our Supreme Court's holding in In re Appeal from Civil Penalty, which we are not at liberty to do. Given that the facts, procedural posture, and arguments raised on appeal in the present case are virtually identical to those at issue in Huang, we cannot escape the conclusion that our decision in Huang must control the result we reach here. Here, as in Huang, a constituent member of the UNC system is being sued by a former employee who seeks compensatory and punitive damages in an action for breach of contract. Like the plaintiff in Huang, Frazier failed to file a petition for judicial review as required by section 150B-43 before filing his complaint in superior court. We therefore conclude that here, as in Huang, Frazier has failed to exhaust his available administrative remedies.
(3) Frazier's failure to allege inadequacy of available administrative remedies
Frazier argues further that the trial court erred in dismissing his claim because his available administrative remedies were inadequate in light of the compensatory and punitive damages he sought in his complaint for breach of contract. Frazier also contends that by merely alleging an action for breach of contract, he sufficiently alleged that his available administrative remedies were inadequate. In support of this argument, Frazier cites this Court's prior decisions in S. Furniture Co. of Conover, Inc. v. Dep't of Transp., 122 N.C.App. 113, 468 S.E.2d 523 (1996), disc. review improvidently allowed, 346 N.C. 169, 484 S.E.2d 552 (1997), and Sanders v. State Pers. Comm'n, 183 N.C.App. 15, 644 S.E.2d 10, appeal dismissed and disc. review denied, 361 N.C. 696, 652 S.E.2d 654 (2007). However, we find Frazier's reliance on S. Furniture and Sanders unavailing. While Frazier is correct that in both those cases, *524 we held that the plaintiffs' lawsuits were not barred because the administrative remedies available to them were inadequate to address their underlying claims for breach of contract damages, his argument overlooks critical distinctions between the present facts and the nature of the claims and administrative remedies at issue in S. Furniture and Sanders.
In S. Furniture, the plaintiff property owner contended that when it granted the Department of Transportation ("DOT") a right-of-way over its land for highway access in 1953, DOT agreed to maintain a secondary road and a median crossover on the highway.
*50 122 N.C.App. at 114, 468 S.E.2d at 524. Nearly four decades later, when DOT closed the median and blocked access to the secondary road, the plaintiff sued for breach of contract. Id. Citing Middlesex , DOT argued that the plaintiff's suit was barred by sovereign immunity because it had an administrative remedy available through section 136-111 of our General Statutes, which provides for special proceedings for inverse condemnation. Id. at 115, 468 S.E.2d at 525. However, we rejected this argument because section 136-111 "does not provide a procedure for [the] plaintiff's breach of contract claim and [DOT] has cited no other statutory procedure which would control [the] plaintiff's breach of contract action," which left the plaintiff "completely foreclosed, under the doctrine of sovereign immunity, from obtaining administrative or judicial relief in a contract action against the State." Id. at 116, 468 S.E.2d at 525. Such is clearly not the case here.
In Sanders, the plaintiffs were a group of State employees who alleged they were wrongfully denied employment benefits after working for more than 12 months as temporary employees and who brought suit for breach of contract as well as claims under the North Carolina Constitution and the North Carolina Administrative Code. 183 N.C.App. at 16-17, 644 S.E.2d at 11. In analyzing whether the trial court had erred in dismissing the plaintiffs' breach of contract action based on sovereign immunity, we focused on "whether [their] complaint contains sufficient allegations to support a finding of waiver of sovereign immunity." Id. at 19, 644 S.E.2d at 13. Because the complaint alleged that the defendants were "manipulating State personnel policies and benefit plans, which govern the terms of state employment, to avoid providing [the] plaintiffs benefits that they rightfully earned as a result of the tenure of their employment," we concluded based on Smith and a line of cases involving similar allegations against the State by employees claiming they were wrongfully denied benefits-see Peverall v. Cty. of Alamance, 154 N.C.App. 426, 573 S.E.2d 517 (2002), disc. review denied, 356 N.C. 676, 577 S.E.2d 632 (2003) ; Hubbard v. Cty. of Cumberland, 143 N.C.App. 149, 544 S.E.2d 587, disc. review denied, 354 N.C. 69, 553 S.E.2d 40 (2001) -that the complaint "sufficiently alleges that [the] defendants accepted [the] plaintiffs' services and, therefore, may not claim sovereign immunity as a defense to their alleged commitment to provide the benefits provided by the personnel policies setting forth the terms of employment." Id. at 20, 644 S.E.2d at 13 (citation and internal quotation marks omitted). The State argued that the plaintiffs' breach of contract claim should nevertheless be barred based on Middlesex . However, we rejected this argument because the State "pointed to no statute specifically affording [the] plaintiffs relief for their breach of contract claims," but instead relied on "generalized statutory and administrative *51 provisions allowing for declaratory-but not monetary or injunctive-relief from administrative agencies." Id. at 22, 644 S.E.2d at 15 (citation omitted). In light of our determination that "this case does not present a situation in which the State has by statute waived sovereign immunity for a specific type of claim, but set forth procedural requirements as conditions precedent to any lawsuit," we held that the trial court erred in dismissing the plaintiffs' breach of contract claim. Id.
In the present case, Frazier contends that S. Furniture and Sanders demonstrate that the APA is categorically inapplicable to claims seeking monetary damages for breach of contract, and therefore urges us to hold that the trial court erred in dismissing his complaint-which he contends, by seeking compensatory and punitive damages, sufficiently alleged that his available administrative *525 remedies were inadequate. We find this argument unpersuasive. Notably, Frazier's argument ignores the fact that neither S. Furniture (in which the State argued the plaintiff failed to exhaust his administrative remedies available under section 136-111 of our General Statutes) nor Sanders (in which the State failed to cite any specific statutory procedure the plaintiffs had failed to exhaust) purported to address the adequacy of the administrative remedies provided by section 150B-43. Further, Frazier's argument overlooks fundamental differences between the facts from which his claim for breach of contract damages arose and those at issue in S. Furniture and Sanders. Moreover, we are unpersuaded by the superficial distinctions he attempts to draw between the present facts and those at issue in our decisions in Tucker and Hedgepeth, which involved strikingly similar fact patterns as are present here and in which we concluded, in keeping with Huang, that the trial court lacked subject matter jurisdiction to hear claims for breach of contract damages filed by University employees who failed to exhaust their available administrative remedies and failed to allege the inadequacy of those remedies in their complaints. See Tucker, --- N.C.App. at ----, 767 S.E.2d at 63 ; Hedgepeth, 2013 WL 6237445 at *4. Moreover, Frazier's argument on this point also presumes the validity of his earlier, related argument-which we have already rejected for the reasons explained supra -that our decision in Huang was somehow overruled by our subsequent decision in Ware.
In our view, here again, Huang is directly on point with the facts and procedural posture of the present case, and consequently controls the outcome. Like the plaintiff in Huang, Frazier argues that his claim for compensatory and punitive damages renders the administrative remedies available pursuant to section 150B-43 inadequate. 107 N.C.App. at 715, 421 S.E.2d at 815. However, as we made clear in Huang, "[t]he *52 burden of showing the inadequacy of the administrative remedy is on the party claiming the inadequacy, and the party making such a claim must include such allegation in the complaint." Id. Neither Frazier's original complaint nor any of his three amended complaints makes any such allegation of inadequacy. Although we have held that "[p]recise language alleging that the State has waived the defense of sovereign immunity is not necessary," so long as the complaint " contain[s] sufficient allegations to provide a reasonable forecast of waiver," Richmond Cty. Bd. of Educ. v. Cowell, 225 N.C.App. 583, 587, 739 S.E.2d 566, 569 (citation and internal quotation marks omitted), disc. review denied, 367 N.C. 215, 747 S.E.2d 553 (2013), Frazier's argument that his complaint provides such a forecast fails because it is based entirely on the fact that his complaint pleads a claim for breach of contract damages. Our analysis of the relevant case law demonstrates that merely pleading a claim for breach of contract is not sufficient, standing alone, to adequately allege that judicial review pursuant to section 150B-43 is an inadequate remedy under circumstances like those presented here. See Huang, 107 N.C.App. at 716, 421 S.E.2d at 816 ; Tucker, --- N.C.App. at ----, 767 S.E.2d at 63 ; Hedgepeth, 2013 WL 6237445 at *4. Therefore, as in Huang, we conclude that Frazier failed to properly allege the administrative remedies available to him were inadequate.
Frazier may well be correct in contending that judicial review pursuant to section 150B-43 does not provide for the compensatory or punitive damages he seeks in conjunction with his breach of contract claim, but we are not convinced that this necessarily renders it an inadequate remedy or otherwise obviates the APA's general exhaustion requirement. Indeed, we believe that Frazier's argument misapprehends the purpose of judicial review under the APA in this context, which, as Huang implies, is to promote judicial economy by providing a forum for efficiently resolving personnel disputes between the University and its employees based on a review of "the completed administrative record" in a less formalized setting before allowing the plaintiff to seek further judicial intervention. 107 N.C.App. at 714-15, 421 S.E.2d at 815. In the present case, had Frazier timely filed a petition for judicial review as the APA requires, the superior court would have been authorized to review the record and determine whether NCCU's *526 decision to terminate his employment was based on an error of law or procedure, lacked substantial supporting evidence, or was arbitrary or capricious or otherwise constituted an abuse of discretion. See N.C. Gen.Stat. § 150B-51. Frazier contends that such judicial review would have been futile and inadequate because even if the superior court agreed with his arguments, the only relief it could afford him would be to remand his case back to *53 NCCU and the same administrators who, he contends, wrongfully terminated his contract. This Court, however, has previously rejected similar arguments and instead held that "futility cannot be established by [the] plaintiffs' prediction or anticipation that [the University] would again rule adversely to [the] plaintiffs' interests." See Affordable Care, Inc. v. N.C. State Bd. of Dental Examiners, 153 N.C.App. 527, 534, 571 S.E.2d 52, 58 (2002).
Because Frazier failed to exhaust his available administrative remedies pursuant to section 150B-43, and also failed to adequately allege that those remedies were inadequate, we hold that the trial court did not err in dismissing his complaint. Accordingly, the trial court's decision is
AFFIRMED.
Judges BRYANT and DIETZ concur.

Although Rule 30(e)(3) of North Carolina's Rules of Appellate Procedure holds that this Court's unpublished decisions do not constitute controlling legal authority, the facts and procedural posture of Hedgepeth are strikingly similar to those of the present case. In Hedgepeth, we held-based on Huang, Johnson , and Hentz -that the trial court did not err in dismissing an action for breach of contract by a University employee who, by failing to petition for judicial review pursuant to section 150B-43, had not exhausted her available administrative remedies and also failed to allege in her complaint that such remedies were inadequate. Indeed, during arguments below in the present case, counsel for NCCU specifically cited Hedgepeth as support for NCCU's motion to dismiss and, just before granting the motion, the trial court stated, "If the Hedgepeth case was published it would be right on point; it's not, so it has no precedential value." Thus, although the trial court was correct that because Hedgepeth was unpublished it does not control the result here, we nevertheless find its reasoning persuasive for the reason that, inter alia, it followed the well-established precedent on which it relied.