MIDDLESEX CONSTRUCTION CORPORATION v. THE STATE OF NORTH CAROLINA EX REL. STATE ART MUSEUM BUILDING COMMISSION

No. 575PA82

(Filed 8 February 1983)

**State §§ 2.2, 4, 4.4— breach of contract action—failure to follow statutory procedure for settling controversy—denial of defendant's motions to dismiss error**

> In an action instituted by plaintiff alleging breach of contract in the construction of the North Carolina Museum of Art building, the trial court erred in denying defendant's motions to dismiss which were raised on the defense of sovereign immunity. Plaintiff failed to exhaust its statutory remedies under G.S. § 143-135.3 prior to instituting a civil action in superior court, and although a contractor may ultimately file an action in superior court, the exhaustion of administrative remedies as provided in G.S. § 143-135.3 is a *condition precedent* to such action, and the provisions become *a part of every contract* entered into between the State and the contractor. The holding in *Smith v. State*, 289 N.C. 303 (1976) abolished sovereign immunity in only those cases where an administrative or judicial determination was not available.

> Justice FRYE did not participate in the consideration or decision of this case.

FROM a decision by *Bailey, J.*, entered 23 July 1982 in Superior Court, WAKE County, denying defendant's Motions to Dismiss pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the North Carolina Rules of Civil Procedure, defendant appealed to the Court of Appeals. Pursuant to Rule 15 of the North Carolina Rules of Appellate Procedure and G.S. § 7A-31, plaintiff peti-

tioned this Court for discretionary review prior to determination by the Court of Appeals. We allowed plaintiff's petition on 3 November 1982.

Plaintiff instituted this action against the defendant by filing a complaint in Superior Court, Wake County, alleging breach of contract in the construction of the North Carolina Museum of Art building. The complaint alleged seven claims for breach of contract which, for the most part, are based on failure of architects, acting as agents for the State Art Museum Building Commission, to properly exercise their duties with respect to the general supervision of the construction. More specifically, plaintiff alleged damages resulting from work ordered beyond that contemplated by the contract and required due to defective specifications; unreasonable delays occasioned by failure to provide plaintiff with instructions necessary to accomplish its work; failure to act on requested change orders; and failure to communicate to plaintiff changes in orders or information on the progress of other contractors.

By its Motions to Dismiss, defendant raised the defense of sovereign immunity, its position being that plaintiff had failed to exhaust its statutory remedies under G.S. § 143-135.3 prior to instituting a civil action in Superior Court. Relying on this Court's holding in *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976), which abolished the defense of sovereign immunity in certain contract actions against the State, plaintiff argued that it was no longer bound by the statutory procedure but could elect to pursue a common law breach of contract action in the first instance.

*Sanford, Adams, McCullough & Beard, by J. Allen Adams, E. D. Gaskins, Jr., William George Pappas, and Nancy H. Hemphill, attorneys for plaintiff-appellee.*

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Special Deputy Attorney General for defendant-appellant.*

MEYER, Justice.

At issue is whether the trial court erred in denying defendant's motions to dismiss. The resolution of this issue involves the interpretation of and the interaction between a statutory provision, G.S. § 143-135.3, and the judicial prescript enunciated in *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412.

In *Smith*, this Court wrote:

> We hold, therefore, that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract.

*Id.* at 320, 222 S.E. 2d at 423-24. In its apparent holding that the defense of sovereign immunity was no longer available to the State in any action for breach of a duly authorized State contract, *Smith* was a landmark decision in the jurisprudence of our State. However, as recognized in *Smith*, the State had, through various legislative enactments prior to that decision, waived its immunity and had expressly consented to be sued on its contracts. *See* G.S. § 136-29(b) (highway construction contracts); G.S. § 115-142(n) (teacher employment contracts) (now repealed). Also referred to in *Smith* as an "important" contractual situation in which the Legislature had already consented to suits against the State is G.S. § 143-135.3, authorizing "*civil actions* on claims arising out of completed contracts for construction or repair work awarded by any state board." *Id.* at 321, 222 S.E. 2d at 424 (emphasis added).

G.S. § 143-135.3, which was amended in 1981, provides as follows:

> § 143-135.3. *Procedure for settling controversies arising from contracts; civil actions on disallowed claims.*
>
> When a claim arises prior to the completion of any contract for construction or repair work awarded by any State board to any contractor under the provisions of this Article, the contractor may submit his claim in writing to the Division of State Construction for decision. Upon completion of any contract for construction or repair work awarded by any State board to any contractor, under the provisions of this Article, should the contractor fail to receive such settlement as he claims to be entitled to under terms of his contract, he may, within 60 days from the time of receiving written notice as to the disposition to be made of his claim, submit to the Secretary of Administration a written and verified claim for such amount as he deems himself entitled to under the terms of said contract, setting forth the facts upon which said claim

is based. In addition, the claimant, either in person or through counsel, may appear before the Secretary of Administration and present any additional facts and arguments in support of his claim. Within 90 days from the receipt of the said written claim, the Secretary of Administration shall make an investigation of the claim and may allow all or any part or may deny said claim and shall have the authority to reach a compromise agreement with the contractor and shall notify the contractor in writing of his decision.

As to such portion of a claim which may be denied by the Secretary of Administration, the contractor may, within six months from receipt of the decision, institute a civil action for such sum as he claims to be entitled to under said contract by the filing of a verified complaint and issuance of summons in the Superior Court of Wake County or in the superior court of any county wherein the work under said contract was performed. The procedure shall be the same as in all civil actions except as herein and as hereinafter set out.

All issues of law and fact and every other issue shall be tried by the judge, without jury; provided that the matter may be referred in the instances and in the manner provided for in Article 20 of Chapter 1 of the General Statutes.

*The submission of the claim to the Secretary of Administration within the time set out in this section and the filing of an action in the superior court within the time set out in this section shall be a condition precedent to bringing an action under this section and shall not be a statute of limitations.*

*The provisions of this section shall be deemed to enter into and form a part of every contract entered into between any board of the State and any contractor, and no provision in said contracts shall be valid that is in conflict herewith.*

The word "board" as used in this section shall mean the State of North Carolina or any board, bureau, commission, institution, or other agency of the State, as distinguished from a board or governing body of a subdivision of the State. "A contract for construction or repair work," as used in this section, is defined as any contract for the construction of

buildings and appurtenances thereto, including, but not by way of limitation, utilities, plumbing, heating, electrical, air conditioning, elevator, excavation, grading, paving, roofing, masonry work, tile work and painting, and repair work as well as any contract for the construction of airport runways, taxiways and parking aprons, sewer and water mains, power lines, docks, wharves, dams, drainage canals, telephone lines, streets, site preparation, parking areas and other types of construction on which the Department of Administration enters into contracts.

"Contractor" as used in this section includes any person, firm, association or corporation which has contracted with a State board for architectural, engineering or other professional services in connection with construction or repair work as well as those persons who have contracted to perform such construction or repair work.

N.C. Gen. Stat. § 143-135.3 (Supp. 1981) (emphasis added).

Apart from the introductory sentence, the present version of the statute is identical to that which was in effect at the time the *Smith* case was decided. Its language could not be clearer: although a contractor may ultimately file an action in Superior Court, the exhaustion of administrative remedies as provided in G.S. § 143-135.3 is *a condition precedent* to such action, and the provisions become *a part of every contract* entered into between the State and the contractor.[1]

The threshold question, then, is whether by its holding, *Smith* was intended to affect or nullify these prior statutory provisions which permit an aggrieved party, after exhausting certain administrative remedies, to institute a civil contract action in Superior Court. *See Stahl-Rider v. State*, 48 N.C. App. 380, 269 S.E. 2d 217 (1980). With respect to this question, one astute

---

1. We do not agree with plaintiff's position that the administrative claims procedure is elective or permissive (the contractor "may" submit his claim in writing). Certainly the procedure was not elective prior to *Smith*. It was the only means by which an aggrieved contractor could obtain relief on an alleged breach of contract with the State. Because the purpose of G.S. § 143-135.3 was to waive the State's sovereign immunity with respect to certain construction contracts, the language reflects the purpose of its enactment: to *permit* or *allow* a contractor to bring a contract action against the State. In this respect only was it permissive.

writer commenting on *Smith* noted that: "The court failed to indicate what effect the *Smith* decision would have upon the procedural requirements necessary to institute civil actions against the state under the statutes which expressly waive governmental immunity. As it now stands a plaintiff conceivably might bypass administrative procedures set up by the legislature and institute his suit in the proper judicial forum." 12 Wake Forest L. Rev. 1082, 1089 (1976). However, as there was nothing in the opinion to indicate the court's intent, "[i]t would seem that the proper interpretation would be that if the court wished to eliminate the established statutory procedures, it would have expressed such an intent." *Id.* at 1089, n. 45.

We read nothing in *Smith* which would indicate an intention to modify, ameliorate or abrogate the legislative mandate of G.S. § 143-135.3. To the contrary, from our reading of the case, the Court's concern was for those contractors who were completely foreclosed, under the doctrine of sovereign immunity, from obtaining administrative or judicial relief in a contract action against the State. Where relief had been afforded through statutory provisions, as in G.S. § 143-135.3, the language in *Smith* abolishing sovereign immunity as a defense to a contract action must be viewed as superfluous.

Plaintiff challenges the constitutionality of G.S. § 143-135.3, arguing that in light of the *Smith* decision, to hold that the statute establishes mandatory procedures applicable to plaintiff's claim would violate due process and equal protection; that is, G.S. § 143-135.3 limits plaintiff to trial without a jury and purports to limit the effect of contractual provisions in conflict with the statute, limitations not imposed on other litigants not bound by statute.

Our holding that the *Smith* decision was not intended to modify the express language of prior statutory enactments providing limited waiver of sovereign immunity in contract actions against the State determines the constitutional question. To be sure, prior to *Smith* the constitutionality of the statute was never open to question: under its limited terms, *Smith* permitted suits against the State where none could be brought otherwise. The *Smith* Court *abolished* sovereign immunity in only those cases where an administrative or judicial determination was not avail-

able. It did so by finding that the State had *implicitly* consented to be sued by entering into a valid contract. Unaffected by the decision were those contractual situations in which the State had *waived* its immunity by statute, thereby *expressly* consenting to suit. That statutory law, including its constitutionality, remains intact, neither modified nor affected by the *Smith* decision. We hold that with respect to that class of cases for which statutory relief had been provided prior to *Smith*, "[i]t is for the General Assembly to determine when and under what circumstances the State may be sued." *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 173, 118 S.E. 2d 792, 795 (1961).

It should be noted that prior to *Smith*, this Court had "steadfastly refused judicially to modify governmental immunity. Even though the court ha[d] recognized the harshness and unreasonableness of the concept, until *Smith v. State* the court had delegated the duty of abrogation of the theory to the legislature." 12 Wake Forest Law Rev. at 1086-87. The *Smith* majority was clearly concerned with the constitutionality of its decision, and Justice Lake, in his dissenting opinion, discussed the question in some detail. We believe that this Court reached its constitutional limits in *Smith* when it abrogated the State's sovereign immunity in contract actions for which no remedy had been provided. Any further extension (or limitation) of the State's liability on its contracts must come from the Legislature. Plaintiff is bound by the mandates of G.S. § 143-135.3 until such time as the Legislature acts further in the matter.

We make no comment on the merits of plaintiff's case. Plaintiff's claims must be pursued under the provisions of G.S. § 143-135.3 and thus the Superior Court of Wake County lacked jurisdiction to adjudicate these claims. *Guthrie v. Ports Auth.*, 307 N.C. 522, 299 S.E. 2d 618 (1983). We hold that the trial court erred in denying defendant's motions to dismiss for lack of jurisdiction. The judgment is reversed without prejudice to the plaintiff to file a new claim within one year of the date of the filing of this opinion in compliance with G.S. § 143-135.3.

Reversed.

Justice FRYE did not participate in the consideration or decision of this case.