Intersal, Inc. v. Hamilton, 2017 NCBC 95.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 9995

INTERSAL, INC.,
                    Plaintiff,

          v.

SUSI H. HAMILTON, Secretary,
North Carolina Department of
Natural and Cultural Resources;
NORTH CAROLINA DEPARTMENT
OF NATURAL AND CULTURAL
RESOURCES; THE STATE OF
NORTH CAROLINA; and FRIENDS
OF QUEEN ANNE'S REVENGE, a
Non-Profit Corporation,

                    Defendants.

**OPINION AND ORDER ON
DEFENDANTS' MOTIONS TO
DISMISS SECOND AMENDED
COMPLAINT**

THIS MATTER comes before the Court on Defendants Susi H. Hamilton, Secretary of the North Carolina Department of Natural and Cultural Resources' ("Hamilton"), the North Carolina Department of Natural and Cultural Resources' ("DNCR"), and the State of North Carolina's (collectively, "State Defendants") Motion to Dismiss ("State Defendants' Motion"), and Defendant Friends of Queen Anne's Revenge's ("FQAR") Motion to Dismiss ("FQAR's Motion"). The State Defendants and FQAR move to dismiss Plaintiff Intersal, Inc.'s ("Plaintiff") Second Amended Complaint.

THE COURT, having considered the Motions to Dismiss, the briefs in support of and in opposition to the Motions to Dismiss, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the State

Defendants' Motion should be GRANTED, and that FQAR's Motion should be GRANTED, for the reasons set forth below.

> *Linck Harris Law Group, PLLC, by David H. Harris, Jr., Esq. for Plaintiff Intersal, Inc.*
>
> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Jeffrey A. Doyle, Esq. and Joshua D. Neighbors, Esq., for Defendant Friends of Queen Anne's Revenge.*
>
> *The North Carolina Department of Justice by Brian D. Rabinovitz, Esq., Olga Vysotskaya de Brito, Esq., and Amar Majmundar, Esq., for Defendants Susi H. Hamilton, the North Carolina Department of Cultural Resources, and the State of North Carolina.*

McGuire, Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

1. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the complaint that are relevant to the Court's determination of the motion. *See Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

2. This action arises from Plaintiff's long-time relationship with State Defendants pursuant to Plaintiff's efforts to recover two shipwrecks off the North Carolina coast, the *El Salvador* and the *Queen Anne's Revenge* ("QAR").

3. Plaintiff is a Florida corporation and is duly registered in North Carolina. Plaintiff is in the business of conducting marine research and recovery projects.

4. DNCR is an executive agency of the State of North Carolina. Defendant Hamilton is the Secretary of DNCR.

5. FQAR was a non-profit corporation organized pursuant to the laws of North Carolina in 2008. FQAR was formed as

> a non-profit organization for the promotion, fund raising efforts, excavation, recovery, removal, stewardship, preservation, conservation, promotion and display of artifacts from the shipwreck "Queen Anne's Revenge", located off Bogue Banks in Carteret County, North Carolina, and believed to be one of the Pirate Blackbeard's ships; the education of the public about the historic, cultural and educational values and attributes of the shipwreck and marine sanctuary; and other acts in furtherance of the purposes stated herein and as permitted for non-profit corporations under North Carolina law.

(FQAR's Mem. Law, ECF No. 55.2 at p. 2.) FQAR filed Articles of Dissolution on March 14, 2016. (2d Am. Compl., ECF No. 44 at ¶ 23.)

6. In 1994, DNCR issued two permits to Plaintiff to search for submerged shipwrecks at Beaufort Inlet in Carteret County. The first permit, BUI584 (the "*El Salvador* Permit"), authorized Plaintiff to search for the *El Salvador*, a private merchant vessel that had been reported lost in a storm in 1750 near Cape Lookout, North Carolina. (ECF No. 44 at ¶ 31.) The second permit, BUI585 (the "*QAR* Permit"), authorized Plaintiff to search for the *QAR* and the *Adventure*, pirate vessels that had been reported lost in 1718. (ECF No. 44 at ¶ 32.)

7. On November 21, 1996, Plaintiff discovered the *QAR* wreckage. (ECF No. 44 at ¶ 33.) Pursuant to the *QAR* Permit, Plaintiff was entitled to claim three-quarters of any treasure recovered from the *QAR*. Plaintiff, however, chose not to secure its claim to the *QAR* treasure because it was more interested in obtaining the exclusive media and replica rights related to the *QAR* shipwreck and its artifacts

(collectively, the "*QAR* Media Rights"), and in the annual renewal of the *El Salvador* permit so that Plaintiff could continue searching for the *El Salvador*. (ECF No. 44 at ¶ 36.)

8.      After locating the *QAR*, Plaintiff and State Defendants negotiated an Agreement dated September 1, 1998 (the "1998 Agreement").[1] In regard to the *QAR* Media Rights, Paragraphs 16 and 17 of the 1998 Agreement provide in relevant part:

> 16.      Except as provided in paragraph 20 and this paragraph, Intersal shall have the exclusive right to make and market all commercial narrative (written, film, CD Rom, and/or video) accounts of project related activities undertaken by the Parties. . . .
>
> 17.      All Parties agree to cooperate in the making of a non-commercial educational video and/or film documentary, or series of documentaries, as long as there is no broadcast originating outside of North Carolina, and there is no distribution or dissemination for sale of the said educational documentary without Intersal's written permission. . . .

(ECF No. 44, Ex. 1 at pp. 16–17.)

9.      The term "Project," as used in the phrase "project related activities" in Paragraph 16, is defined in Paragraph 11 of the 1998 Agreement as "all survey, documentation, recovery, preservation, conservation, interpretation and exhibition activities related to any portion of the shipwreck of QAR or its artifacts." (ECF No. 44, Ex. 1 at p. 15.)

10.      With regard to the *El Salvador* permit, Paragraph 33 of the 1998 Agreement provides in part:

> Subject to the provisions of Article 3 of Chapter 121 of the General Statutes of North Carolina and subchapter .04R of Title 7 of the North Carolina Administrative Code, the Department agrees to recognize

---

[1] Maritime Research Institute, Inc., an entity not relevant to the present controversy, also executed the 1998 Agreement with Intersal and DNCR.

Intersal's . . . efforts and participation in the QAR project as sufficient to satisfy any performance requirements associated with annual renewal of Intersal's permits for either *El Salvador* or *Adventure*, and for the life of this Agreement, renewal of said permits cannot be denied without just cause.

(ECF No. 44, Ex. 1 at p. 21.)

11. In the 1998 Agreement, Plaintiff also assigned to DNCR its interests in "the title and ownership of *QAR* and its artifacts." (ECF No. 44, Ex. 1 at p. 16.)

12. The 1998 Agreement had a term of 15 years. (ECF No. 44, Ex. 1 at p. 22.)

13. Plaintiff alleges that DNCR breached the 1998 Agreement by:

    a. Failing to recognize the validly executed 1998 Agreement contract renewal option. (ECF No. 44 at ¶ 45.A.) Plaintiff alleges that it renewed the 1998 Agreement in late 2012. (ECF No. 44 at ¶ 43.) State Defendants deny that the 1998 Agreement was renewed.

    b. Violating conflicts of interest provisions in the 1998 Agreement, because DNCR employees with oversight of the *QAR* project also served on FQAR's Board of Directors. (ECF No. 44 at ¶ 45.B.)

    c. Violating Plaintiff's *QAR* Media Rights under the 1998 Agreement, because DNCR employees acting as members of FQAR's Board of Directors contracted with a third-party media company for website and video production concerning *QAR*'s retrieval. (ECF No. 44 at ¶ 45.B, 45.D.), and

d. Engaging in a "pattern of obstruction, delay, and failure to follow established procedure" regarding the yearly renewal process for the *El Salvador* permit. (ECF No. 44 at ¶ 45.C.)

14. On July 26, 2013, Plaintiff filed a Petition for a Contested Case with the North Carolina Office of Administrative Hearings ("OAH"), *Intersal v. N.C. Dep't of Cultural Resources*, 13 DCR 15732, alleging that DNCR had breached the 1998 Agreement. (ECF No. 44 at ¶ 49.)

15. On August 9, 2013, DNCR issued Plaintiff a renewal of the *El Salvador* permit. (ECF No. 44 at ¶ 50.)

16. OAH ordered the parties to mediate the disputes in 13 DCR 15732. At the request of State Defendants, Nautilus Productions, LLC ("Nautilus") also took part in the mediation. (ECF No. 44 at ¶¶ 51–52.) Nautilus was Plaintiff's "*QAR* Video Designee" under the 1998 Agreement. (ECF No. 44 at ¶ 44.)

17. As a result of the mediation, on October 15, 2013, Plaintiff, DNCR, and Nautilus executed a Settlement Agreement ("2013 Settlement Agreement"). (ECF No. 44 at ¶ 53.)

18. The 2013 Settlement Agreement "supersedes the 1998 Agreement . . . and all prior agreements between [DNCR], [Plaintiff], and Nautilus regarding the QAR project." (ECF No. 44, Ex. 1 at p. 1.) Additionally, the 2013 Settlement Agreement provides that

> [Plaintiff] and its successors and assigns hereby release and forever discharge the State, its officers, agents and employees, including [DNCR], from any and all claims, demands, actions, causes of action, rights, damages, costs, attorney fees, expenses and compensation

whatsoever, whether arising out of common law or statute, whether state or federal claim, that [Plaintiff] now has, or that were or could have been made relating to [Plaintiff]'s rights under the 1998 Agreement or any other prior agreements related to the *Adventure*, *El Salvador*, or *Queen Anne's Revenge* shipwrecks.

(ECF No. 44, Ex. 1 at p. 6.)

19. As part of the 2013 Settlement Agreement, the parties renegotiated the *QAR* Media Rights. The 2013 Settlement Agreement states that Plaintiff has the "exclusive right to produce a documentary film about the *QAR* project for licensing and sale," and that DNCR and Plaintiff would "collaborate in making other commercial narrative." (ECF No. 44, Ex. 1 at pp. 3–4.) The 2013 Settlement Agreement provides for a procedure by which DNCR could grant media and access passes to *QAR*-related artifacts and activities. (ECF No. 44, Ex. 1 at p. 4.) In addition, the 2013 Settlement Agreement states:

> **Non-commercial Media.**
> 1) All non-commercial digital media, regardless of producing entity, shall bear a time code stamp, and watermark (or bug) of Nautilus and/or [DNCR], as well as a link to [DNCR], [Plaintiff], and Nautilus websites, to be clearly and visibly at the bottom of any web page on which the digital media is being displayed.
> 2) [DNCR] agrees to display non-commercial digital media only on [DNCR's] website.

(ECF No. 44, Ex. 1 at p. 4.)

20. The parties also renegotiated Plaintiff's right to renew the *El Salvador* permit. The 2013 Settlement Agreement states in relevant part:

> **El Salvador Permit.** In consideration for [Plaintiff]'s significant contributions toward the discovery of the QAR and continued cooperation and participation in the recovery, conservation, and promotion of the QAR, [DNCR] agrees to continue to issue to [Plaintiff] an exploration and recovery permit for the shipwreck *El Salvador* in the search area defined in the current permit dated 9 August 2013. [DNCR]

agrees to continue to issue the permit through the year in which the QAR archaeology recovery phase is declared complete so long as the requirements contained in the permit are fulfilled. Subject to the provisions of Article 3 of [G.S.] Chapter 121 . . . and the North Carolina Administrative Code, [DNCR] agrees to recognize [Plaintiff]'s efforts and participation in the QAR project as sufficient to satisfy any performance requirements associated with annual renewal of [Plaintiff]'s permit for the *El Salvador*. . . . If the recovery phase is complete prior to 2016, [DNCR] agrees to renew the permit through at least the end of 2016.

(ECF No. 44, Ex. 1 at pp. 1–2.)

21.     Plaintiff alleges that DNCR breached the 2013 Settlement Agreement by, *inter alia*:

a.     Displaying over 2,000 *QAR* digital images and over 200 minutes of digital video on websites other than DNCR's site without the required watermark or time code stamp. (ECF No. 44 at ¶ 59.A.)

b.     Failing to implement certain mandates of the 2013 Settlement Agreement such as changes to the *QAR* project media policy. (ECF No. 44 at ¶ 59.C.)

c.     Failing to properly inform Plaintiff of opportunities under the collaborative commercial narrative language of the 2013 Settlement Agreement. (ECF No. 44 at ¶ 59.D.)

d.     Interfering with Plaintiff's *QAR* Media Rights by "allowing [FQAR] filming of *QAR* recovery operations via independent media company Zion Consulting Group on September 14, 2015," after which footage was posted on FQAR's Facebook page without a watermark or time code stamp, (ECF No. 44 at ¶ 59.G.) and

e.  Interfering with Plaintiff's *QAR* Media Rights by "allowing [FQAR] to bring [a local radio show] to dive the *QAR* shipwreck and shoot footage" on September 9, 2015. (ECF No. 44 at ¶ 59.H.)

22.  On March 2, 2015, Plaintiff filed a second Petition for a Contested Case with OAH, *Intersal v. N.C. Dep't of Cultural Resources*, 15 DCR 16102, "seeking a remedy to the State Defendants' violations of the [2013] Settlement Agreement and violations of [Plaintiff]'s contractual and intellectual property rights." (ECF No. 44 at ¶ 60; *see* Def.'s Brief Supp. Mot. Dismiss, ECF No. 57, Ex. A.) In response to DNCR's motion to dismiss the petition, Plaintiff subsequently dismissed the 15 DCR 16102 without prejudice on May 26, 2015. (ECF No. 44 at ¶ 61.)

23.  In November 2015, Plaintiff sought renewal of the *El Salvador* permit. (ECF No. 44 at ¶ 76.)

24.  In or around November 2015, State Defendants sought an opinion from the Kingdom of Spain as to whether DNCR could issue a permit to search for the *El Salvador*. (ECF No. 44 at ¶ 79.) On November 30, 2015, counsel for the Kingdom of Spain sent a letter to DNCR stating that the permission of Spain would be required in order for DNCR to issue any permits to search for the *El Salvador*. (ECF No. 44 at ¶ 80.) Plaintiff alleges that the *El Salvador* was a privately owned vessel and is not the property of the Kingdom of Spain. (ECF No. 44 at ¶ 89.)

25.  On December 1, 2015, DNCR sent Plaintiff a Notice of Denial of Renewal of the *El Salvador* permit. (ECF No. 44 at ¶ 81.) DNCR denied the renewal on the grounds "(1) that [Plaintiff] failed to fulfill material requirements . . . because

[Plaintiff] failed to demonstrate operational control of laboratory activities and failed to meet certain reporting requirements; and (2) the issuance of further renewal permits was 'not deemed to be in the best interest of the State' because 'Spain's assertion of its ownership interest in *El Salvador* requires careful consideration of the State's legal authority to issue a permit in this situation.'" (ECF No. 57, Ex. B at p. 2.)

26. Plaintiff requested a review, and on January 21, 2016, DNCR issued a final agency decision upholding the denial of the *El Salvador* permit. (ECF No. 57, Ex. B at p. 1.)

27. Plaintiff filed a Petition for a Contested Case with OAH appealing DNCR's denial of renewal of the *El Salvador* permit, *Intersal v. N.C. Dep't of Cultural Resources*, 15 DCR 09742. (ECF No. 44 at ¶ 96; ECF No. 57, Ex. A.) On May 27, 2016, an Administrative Law Judge ("ALJ") issued an order dismissing Plaintiff's contested case. (ECF No. 57, Ex. B at p. 3.)

28. Plaintiff sought review in Wake County Superior Court pursuant to the North Carolina Administrative Procedures Act ("APA"), North Carolina General Statute § 150B-43 (hereinafter "G.S."). *Intersal, Inc. v. N.C. Dep't of Nat. and Cultural Res.*, 16-CVS-8149.

29. Plaintiff filed this action on July 27, 2015. On September 10, 2015, this case was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court and was assigned to the undersigned Special

Superior Court Judge for Complex Business Cases by Order of Chief Judge James L. Gale. (ECF Nos. 5 and 6.)

30.     On May 2, 2016, the Court issued an Order staying this matter pending resolution of the administrative process in 15 DCR 09742. (ECF No. 38.)

31.     On November 7, 2016, the Honorable Paul Ridgway entered an order ("Judge Ridgeway's Order") upholding the OAH's decision on the grounds that under G.S. § 121-25(a), renewal of the permit would not be in the "best interest of the State." (ECF No. 44 at ¶ 97; ECF No. 57, Ex. B at pp. 4–6.)

32.     The stay of this matter ended in January 2017.

33.     On February 7, 2017, Plaintiff filed its Second Amended Complaint alleging three claims: (1) breach of the 1998 Agreement and the 2013 Settlement Agreement against State Defendants; (2) tortious interference with contractual relations against FQAR; and (3) declaratory judgment seeking declarations that certain statutory provisions cannot be enforced against Plaintiff, or, alternatively, that the 2013 Settlement Agreement and the 1998 Agreement are void. (ECF No. 44 at ¶¶ 107–116.C.) In addition, Plaintiff seeks a declaration that State Defendants have breached the Agreements. (ECF No. 44 at ¶ 116.D.)

34.     On March 30, 2017, State Defendants and FQAR both moved to dismiss the claims against them. The Court held a hearing on the motions on July 7, 2017. At the hearing, the Court asked Plaintiff and the State Defendants to file supplemental briefs with the Court specifically addressing the issue of exhaustion of administrative remedies. On July 14, 2017, Plaintiff and the State Defendants filed the requested

supplemental briefs. (Pl.'s Suppl. Br., ECF No. 82; State Defs.' Suppl. Br., ECF No. 83.)

35. The motions are now ripe for determination.

ANALYSIS

36. The First and Third Claims for Relief in the Second Amended Complaint are against the State Defendants, and the Court will address these claims prior to addressing Plaintiff's Second Claim for Relief, which is directed only to FQAR.

A. *Breach of 1998 Agreement and 2013 Settlement Agreement (First Claim for Relief)*

37. Plaintiff's first claim is for breach of contract. (ECF No. 44 at ¶¶ 107–110.) Plaintiff alleges that DNCR committed several breaches of the 1998 Agreement (ECF No. 44 at ¶ 45), breached the 2013 Settlement Agreement by failing to renew the *El Salvador* permit (ECF No. 44 at ¶ 83) and violated the *QAR* Media Rights granted to Plaintiff in the 2013 Settlement Agreement. (ECF No. 44 at ¶ 59.) State Defendants move to dismiss the breach of contract claims pursuant to Rules 12(b)(6) and 12(b)(1).

Rule 12(b)(6) standard

38. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty

that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted). The Court construes the complaint liberally and accepts all allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).

39.     The Court may consider documents which are the subject of plaintiff's complaint and to which the complaint specifically refers, including the contract that forms the subject matter of the action. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

Rule 12(b)(1) standard

40.     Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy. *Hardy v. Beaufort Cty. Bd. of Educ.*, 200 N.C. App. 403, 408, 683 S.E.2d 774, 778 (2009). "When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings." *Dep't of Transp. v. Blue*, 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001).

Claims for breach of 1998 Agreement

41.     State Defendants move to dismiss Plaintiff's claims under the 1998 Agreement on the ground that the 2013 Settlement Agreement was a novation of the 1998 Agreement and extinguished any rights Plaintiff had under the 1998 Agreement. (ECF No. 57 at p. 20; ECF No. 70 at pp. 3–4.)

42.     "A novation is the substitution of a new contract for an old one which is thereby extinguished. One of the several methods by which a contract may be discharged is the substitution of a new contract, the terms of which differ from the original." *Carolina Equipment & Parts Co. v. Anders*, 265 N.C. 393, 400, 144 S.E.2d 252, 257 (1965) (internal citations omitted). The essential requisites of a novation are: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new contract. *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 653, 670 S.E.2d 321, 325 (2009). "Whether a new contract between the same parties discharges or supersedes a prior agreement depends upon their intention as ascertained from the instrument, the relation of the parties and the surrounding circumstances." *Zinn v. Walker*, 87 N.C. App. 325, 335, 361 S.E.2d 314, 320 (1987). A novation precludes the assertion of any right under the original contract. *Housing, Inc. v. Weaver*, 52 N.C. App. 662, 672, 280 S.E.2d 191, 197 (1981).

43.     The 2013 Settlement Agreement expressly replaces and substitutes that agreement for the 1998 Agreement. (ECF No. 44, Ex. 1 at p. 1.) The 2013 Settlement Agreement also contains a broad release of Plaintiff's claims under the 1998

Agreement. (ECF No. 44, Ex. 1 at p. 6.) Plaintiff does not address the issue of novation or its release of claims in its arguments. The Court concludes that the 2013 Settlement Agreement was a novation of the 1998 Agreement and that Plaintiff's rights under the 1998 Agreement have been extinguished. The State Defendants' motion to dismiss Plaintiff's claims for breach of contract arising from the 1998 Agreement should be GRANTED and the claims dismissed WITH PREJUDICE.

Claims for breach of *QAR* Media Rights under 2013 Agreement

44.     Plaintiff alleges that DNCR breached the 2013 Settlement Agreement by violating the *QAR* Media Rights granted to Plaintiff. (ECF No. 44 at ¶ 59.) State Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims for these breaches because Plaintiff failed to exhaust administrative procedures and did not allege in its Second Amended Complaint that available administrative remedies were inadequate to remedy its breach of contract claims. (ECF No. 57 at pp. 14–16; ECF No. 70 at p. 9.) State Defendants contend that Plaintiff should have pursued its claims for violation of the 2013 Settlement Agreement through a contested case proceeding under the APA. (ECF No. 57 at pp. 14–16.)

45.     "[T]he [APA] does not preclude entirely the possibility of judicial review by use of . . . procedures outside the [APA]." *Kane v. N.C. Teachers' & State Emps. Comprehensive Major Med. Plan*, 229 N.C. App. 386, 390, 747 S.E.2d 420, 423 (2013) (internal quotations omitted). It is well established, however, that "[w]hen the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the

courts." *Jackson v. N.C. Dep't of Human Res. Div. of Mental Health, Developmental Disabilities, & Substance Abuse Servs.*, 131 N.C. App. 179, 186, 505 S.E.2d 899, 903–904 (1998). "On the other hand, if the remedy established by the NCAPA is inadequate, exhaustion is not required." *Id.* at 186, 505 S.E.2d at 904. The burden of establishing that an administrative remedy is inadequate is on the party claiming inadequacy, and that party must allege the inadequacy in their complaint. *Kane*, 229 N.C. App. at 391, 747 S.E.2d at 424. "An action is properly dismissed under the Rule for lack of subject matter jurisdiction when the plaintiff has failed to exhaust its administrative remedies." *Bryant v. Hogarth*, 127 N.C. App. 79, 83, 488 S.E.2d 269, 271 (1997).

46. Plaintiff acknowledges that it did not exhaust the procedures available under the APA or any other administrative process in seeking remedy for violations of the *QAR* Media Rights in the 2013 Settlement Agreement. Plaintiff filed a petition for a contested case (15 DCR 16102) pursuant to G.S. § 150B-23, but it dismissed the petition before any decision was reached by OAH and took no further action on the petition.

47. Plaintiff argues that it was not required to exhaust the procedures provided by the APA because it cannot recover the monetary damages it seeks for breach of contract through those procedures. Plaintiff contends that the "OAH is an administrative, non-judicial entity of limited jurisdiction. Seeking contract remedies in OAH is futile as OAH will not hear it." (Pl.'s Resp. State Defs.' Mot. Dismiss, ECF No. 64 at p. 19.) The Court of Appeals, however, rejected this argument as a grounds

for excusing exhaustion in *Frazier v. N.C. Cent. Univ.*, 779 S.E.2d 515, 525–26, 2015 N.C. App. LEXIS 957, at **31–33 (rejecting plaintiff's contention that "review pursuant to section 150B-43 does not provide for the compensatory or punitive damages he seeks in conjunction with his breach of contract claim" because it does not "render[] the procedure an inadequate remedy or otherwise obviate[] the APA's general exhaustion requirement").

48.     Plaintiff also argues that it is not required to exhaust administrative remedies because DNCR has not adopted a review or appeal procedure by which Plaintiff could pursue claims for breaches of the 2013 Settlement Agreement. (ECF No. 82 at pp. 1, 4.)[2] The Court of Appeals addressed this argument in *Jackson* and held:

> Administrative decisions of State agencies are subject to review only under the provisions of the NCAPA, unless the agency is specifically exempted from its provisions by NCAPA itself or some other statute. . . .
>
> [T]he Act does not require agencies to promulgate appellate procedures as plaintiff contends. The NCAPA anticipates that agencies will not always promulgate administrative remedies, and accordingly provides that, unless specifically exempt from the NCAPA, "the (agency's) decisions are subject to administrative review under the Act."

*Jackson*, 131 N.C. App. at 184, 505 S.E.2d at 902–03 (quoting *Vass v. Bd. of Trs. of Teachers' and State Emps.' Comprehensive Major Med. Plan*, 324 N.C. 402, 407, 379

---

[2] The Court reviewed the rules adopted by the DNRC contained in the North Carolina Administrative Code (NCAC) and could not find a process for seeking review of claims that DNCR violated rights conferred on a party by contract. See NCAC, Title 7, Department of Cultural Resources, 07 NCAC 1A.0101 et. seq.

S.E.2d 26, 29 (1989)). DNCR was not required to adopt rules for appeal, and Plaintiff's claims for breach of contract are subject to review under the APA.

49.     Plaintiff also argues that it may sue State Defendants in court because the State waived its sovereign immunity and consented to being sued by entering into the 2013 Settlement Agreement, citing *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423–424 (1976) ("We hold, therefore, that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract."). (ECF No. 64 at p. 11.) The holding in *Smith*, however, was limited by *Middlesex Constr. Corp. v. State*, 307 N.C. 569, 299 S.E.2d 640 (1983). In *Middlesex*, the court concluded that *Smith* was not "intended to affect or nullify these prior statutory provisions which permit an aggrieved party, after exhausting certain administrative remedies, to institute a civil contract action in Superior Court." *Id.* at 573–74, 299 S.E.2d at 643. The Court held that "[t]he *Smith* Court abolished sovereign immunity in only those cases where an administrative or judicial determination was not available." *Id.* at 574, 299 S.E.2d at 643 (emphasis omitted). Moreover, in *Frazier*, the court held "that section 150B-43 [of the APA] functions as exactly the type of statutory waiver contemplated by *Middlesex*." 779 S.E.2d at 522, 2015 N.C. App. LEXIS 957, at *21. In other words, by entering into the 2013 Settlement Agreement, DNCR did not waive the requirement that Plaintiff exhaust administrative remedies before bringing suit.

50. Finally, and most significantly, even if Plaintiff would be excused from exhausting the review process provided under the APA because the remedies available are ineffective or futile, it has not alleged that administrative remedies are inadequate. *Kane*, 229 N.C. App. at 391–93, 747 S.E.2d at 424–425 (noting that even though the parties agreed the administrative process would be futile, the court was nevertheless required to dismiss because "[t]he burden of showing inadequacy is on the party claiming inadequacy, *who must include such allegations in the complaint.*" (emphasis in original). The failure to allege that administrative remedies are inadequate requires dismissal of Plaintiff's claim.

51. State Defendants' motion to dismiss Plaintiff's claim that DNCR breached the 2013 Settlement Agreement by violating its *QAR* Media Rights should be GRANTED, and that claim dismissed WITHOUT PREJUDICE.

Claim for breach of 2013 Settlement Agreement by failing to renew *El Salvador* permit

52. Plaintiff also alleges that DNCR breached the 2013 Settlement Agreement by failing to renew the *El Salvador* permit. (ECF No. 44 at ¶¶ 83, 86.) State Defendants move to dismiss, pursuant to Rule 12(b)(6), on the grounds that Plaintiff's claim is barred by res judicata or collateral estoppel. (ECF No. 57 at pp. 9–14.) State Defendants argue that Judge Ridgeway's Order, holding that DNCR had properly denied the *El Salvador* permit under G.S. § 121-25 because issuing the permit was not in the best interest of the State, is a final decision on the merits that precludes Plaintiff from re-litigating the issue of whether DNCR lawfully denied renewal of the permit in this case. (*Id.*) Plaintiff contends that Judge Ridgeway's

failure to address whether the denial of the *El Salvador* Permit breached the 2013 Settlement Agreement impliedly means that the "issue was never considered" and is therefore not precluded in this action. (ECF No. 64 at p. 17.)

53.     "The doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are companion doctrines which have been developed by the Courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Little v. Hamel*, 134 N.C. App. 485, 487, 517 S.E.2d 901, 902 (1999) (internal quotation marks omitted). Under the doctrine of res judicata, a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies. *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). "The doctrine prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action." *Id.* (internal quotation marks omitted).

54.     The essential elements of res judicata are: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." *Herring v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 188 N.C. App. 441, 444, 656 S.E.2d 307, 310 (2008). Although the identity of the cause of action is an essential element of res judicata, under North Carolina law, res judicata "operates to bar all related claims and thus plaintiffs are not entitled to a separate suit merely by shifting

legal theories." *Cannon v. Durham Cty. Bd. of Elections*, 959 F. Supp. 289, 292 (E.D.N.C. 1997).

55.     "Under the doctrine of collateral estoppel, or issue preclusion, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011) (internal quotation marks omitted). A party asserting collateral estoppel must show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue that was actually litigated and necessary to the judgment, and that both the party asserting collateral estoppel and the party against whom collateral estoppel is asserted were either parties to the earlier suit or were in privity with those parties. *Id.*

56.     In this case, Plaintiff's claim that DNCR breached the 2013 Settlement Agreement by denying renewal of the *El Salvador* Permit is barred by the doctrine of res judicata. There is no dispute that Plaintiff and DNCR were parties to the administrative matter in 15 DCR 09742. Nor is there a dispute that Judge Ridgeway's Order was a final adjudication on the merits in the administrative matter. *See Catawba Mem'l Hosp. v. N.C. Dep't of Human Res.*, 112 N.C. App. 557, 565, 436 S.E.2d 390, 394 (1993) (res judicata applies to decisions of State administrative agencies made pursuant to the contested case procedure in the APA).

57.     Plaintiff's breach of contract claim was raised in the contested case proceeding in 15 DCR 09742. (ECF No. 57, Ex. A at p. 3–4; ECF No. 78 at pp. 31–33

and 34.) Plaintiff concedes that it explicitly raised the claim and litigated the issue throughout the proceedings in 15 DCR 09742. (ECF No. 64 at p. 17 ("In appealing the denial of renewal of the El Salvador search permit . . . Plaintiff repeatedly argued before the ALJ and Judge Ridgeway that the State was required to renew the search permit per the clear terms of the [2013] Settlement Agreement.").) Therefore, Plaintiff is barred from raising its breach of contract claim in this lawsuit.

58.     Even if Judge Ridgway did not consider Plaintiff's breach of contract claim, Plaintiff cannot now seek relief under that theory in this Court. In *Catawba Mem'l Hosp.*, the Court of Appeals held that "[a]n administrative decision denying or dismissing a party's claim on the merits precludes such party from obtaining, in a judicial proceeding not designed for review of the administrative decision, *the relief denied by the administrative agency, whether upon the same ground as urged in the administrative proceeding, or upon another ground.*" 112 N.C. App. at 565, 436 S.E.2d at 394 (emphasis added). In 15 DCR 09742, Plaintiff sought relief on the grounds, *inter alia*, that DNCR breached the 2013 Settlement Agreement when it denied renewal of the *El Salvador* permit, and Judge Ridgeway's Order was a final judgment denying that relief. Plaintiff cannot now seek to raise the alleged breach of the 2013 Settlement Agreement as a basis for relief in this lawsuit. The holding in *Catawba Mem'l Hosp.* controls, and Plaintiff is precluded from obtaining a determination that DNCR breached the 2013 Settlement Agreement by denying renewal of the permit in this lawsuit. 112 N.C. App. at 564–565, 436 S.E.2d at 394 (affirming dismissal of plaintiff's claim for declaratory judgment because plaintiff "was seeking a declaratory

judgment regarding a matter which it previously litigated in the contested case and which was resolved against it in the final agency decision.").

59. State Defendants' motion to dismiss Plaintiff's claim that DNCR breached the 2013 Settlement Agreement by failing to renew the *El Salvador* permit should be GRANTED, and that claim dismissed WITH PREJUDICE.

*B. Plaintiff's Claim for Declaratory Relief*

60. In its Third Claim for Relief, Plaintiff seeks the following declarations pursuant to G.S. § 1-253 and Rule 57: "(A) Declare Chapters 121 and 132 of the North Carolina General Statutes, to the extent said provisions abrogate [Plaintiff]'s contractual rights created by the 1998 Agreement and [2013] Settlement Agreement, unenforceable; (B) In the alternative, declare that the [2013] Settlement Agreement is void and the provisions of the 1998 Agreement continue to be in effect; (C) In the alternative, declare both the 1998 and [2013] Settlement Agreements are void, and as such, the provisions of the 1994 QAR search permit (BU1585) apply and control; or that title to *QAR* is vested in [Plaintiff]; (D) Declare the State Defendants' actions constitute breach of contract by an executive agency of the State and violates [Plaintiff]'s intellectual property rights; and (E) Make further declarations as warranted by State Defendants' actions shown herein, and in discovery and trial, and as is just and proper." (ECF No. 44 at ¶ 116.)

61. Under North Carolina law, a declaratory judgment is a statutory remedy that grants a court the authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit. G.S. § 1-

253; *Town of Pine Knoll Shores v. Carolina Water Serv., Inc.*, 128 N.C. App. 321, 321, 494 S.E.2d 618, 618 (1998). The Court may, by declaratory judgment, "determine[ ] any question of construction or validity" and declare the "rights, status, and other legal relations" of the parties under contracts or statutes. G.S. § 1-254.

62.     State Defendants argue that Plaintiff's claim for declaratory judgment should be dismissed pursuant to Rule 12(b)(1) because Plaintiff did not exhaust administrative remedies. (ECF No. 57 at p. 16.) State Defendants contend Plaintiff should have pursued the declaratory relief before OAH under G.S. § 150B-4(a), which provides in relevant part as follows:

> On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency. Upon request, an agency shall also issue a declaratory ruling to resolve a conflict or inconsistency within the agency regarding an interpretation of the law or a rule adopted by the agency.

63.     Plaintiff makes no specific argument regarding State Defendants' argument that Plaintiff was required to exhaust G.S. § 150B-4(a) as to its declaratory judgment claim.

64.     Plaintiff's first requested declaration regarding the enforceability of Chapters 121 and 132 of the General Statutes falls squarely within the plain language of G.S. § 150B-4(a), since it seeks a declaration "as to the applicability to a given state of facts of a statute administered by the agency." G.S. § 150B-4(a). DNCR administers both Chapter 121 and 132. *See, e.g.*, G.S. § 121-3, -5, -23, and -25. Plaintiff could, and should, have sought its declaratory relief regarding these statutes under G.S. § 150B-4(a). Plaintiff failed to exhaust its administrative remedies or allege that

such remedies would be inadequate. State Defendants' motion to dismiss Plaintiff's claim for declaratory relief in paragraph 116.A of the Second Amended Complaint should be GRANTED, and that claim dismissed WITH PREJUDICE.

65. Plaintiff's remaining alternative claims for declarations do not appear to fall under the plain language of G.S. § 150B-4(a). The remaining declarations Plaintiff seeks do not involve the validity or application of statutes administered, or rules or orders promulgated by DNCR, but instead are declarations regarding the validity of, and Plaintiff's rights under, the 1998 Agreement and 2013 Settlement Agreement.

66. The Court must dismiss Plaintiff's separate, alternative claims for declaratory judgment based upon Plaintiff's failure to allege that its remedy available under G.S. § 150B-4(a) is inadequate. *Kane*, 229 N.C. App. at 391, 747 S.E.2d at 424. In *Kane*, there was no dispute that the administrative process could not provide the plaintiff with the relief it sought. The Court opined "that imposition of the requirement to allege futility or inadequacy in this case appears both illogical and a subversion of the very intent behind the exhaustion of administrative remedies requirement: judicial economy." *Id.* at 392, 747 S.E.2d at 424. Nevertheless, the Court held that "Plaintiff's complaint and declaratory judgment action contains no allegation that her administrative remedies were inadequate, and thus, all of her claims should have been dismissed pursuant to Rule 12(b)(6)." *Id.*

67. State Defendants' motion to dismiss Plaintiff's claim for declaratory relief in Paragraphs 116.B, C, D, and E of the Second Amended Complaint should be GRANTED, and that claim dismissed WITHOUT PREJUDICE.

C. *Plaintiff's claim for tortious interference against FQAR*

68. In its Second Claim for Relief, Plaintiff alleges that FQAR tortiously interfered with the 1998 Agreement and with the 2013 Settlement Agreement. (ECF No. 44 at ¶¶ 111–15.) FQAR contends that Plaintiff cannot make such an argument regarding the 1998 Agreement because that agreement has been superseded. (ECF No. 55.2 at pp. 10–12.) FQAR also moves to dismiss this claim under Rule 12(b)(6), arguing that Plaintiff has not alleged conduct that would constitute inducement to breach the 2013 Settlement Agreement. (ECF No. 55.2 at pp. 12–17.)

69. In order to prevail on a claim for tortious interference with contract, a plaintiff must establish that: (1) a valid contract existed between the plaintiff and a third party which conferred upon the plaintiff contractual rights against the third party; (2) the defendant knew of the contract; (3) the defendant intentionally induced the third person not to perform the contract; (4) in doing so acted without justification; and (5) resulting in actual damage to the plaintiff. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

70. In a tortious interference with contract claim, "the inducement required to establish a claim for intentional interference . . . requires purposeful conduct intended to influence a third party not to enter into a contract with the claimant." *KRG New Hill Place, LLC v. Springs Investors, LLC*, 2015 NCBC LEXIS 20, at *14

(N.C. Super. Ct. Feb. 27, 2015) (citing *Inland Am. Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 354, 712 S.E.2d 366, 370 (2011)).

71. Plaintiff's theory of tortious interference seems be that FQAR was a "shadow corporation of [DNCR]" because certain DNCR employees also served on FQAR's board of directors, and that they "conspired" to violate the QAR Settlement Agreement. (ECF No. 64 at pp. 7–8; ECF No. 44 at ¶¶ 9, 10, 27, 28, and 29.) In the Second Amended Complaint, Plaintiff alleges tortious interference with the 1998 Agreement because in "mid-2013," FQAR entered into an agreement with third parties for the production of videos and a website about the *QAR*, and one of the third parties was run by the wife of a DNCR employee who was serving both with DNCR and on FQAR's board of directors. (ECF No. 44 at ¶¶ 9, 46.C.) Plaintiff also alleges that FQAR interfered with the 2013 Settlement Agreement by DNCR "allowing" FQAR to film QAR recovery operations and to post video footage on the FQAR Facebook page, and by DNCR "allowing" FQAR to bring a local radio host to dive the QAR shipwreck and shoot video without using proper media protocols required by the 2013 Settlement Agreement. (ECF No. 44 at ¶ 59.G. and H.)

72. The Court concludes that, taken separately or together, the allegations do not adequately state a claim for tortious interference with contract. Even taken as true and liberally construed, the allegations do not allege that FQAR took any purposeful action to induce DNCR to breach the 1998 Agreement or the 2013 Settlement Agreement. *See Gunn v. Simpson, Schulman & Beard, LLC*, 2011 NCBC LEXIS 35, at **24–25 (N.C. Super. Ct. Sept. 23, 2011) (dismissing a claim for tortious

interference because there was no allegation of inducement or specific action taken by the defendant). Mere allegations that DNCR employees also served as members of FQAR's board of directors, or that DNCR permitted FQAR to film recovery operations and post videos to its website or to dive the *QAR* wreck do not amount to allegations of purposeful conduct on the part of FQAR that was intended to induce DNCR to breach any contracts.

73. "It is well settled under North Carolina law that a plaintiff's failure to plead inducement justifies dismissal of a tortious interference claim for failure to state a claim upon which relief may be granted." *Gunn*, 2011 NCBC LEXIS 35 at *24 (citing *Holleman v. Aiken*, 193 N.C. App. 484, 500, 668 S.E.2d 579, 590 (2008)). Because Plaintiff has failed to plead any purposeful act of inducement by FQAR, FQAR's motion to dismiss Plaintiff's claim that FQAR tortiously interfered with the 1998 Agreement and the 2013 Settlement Agreement should be GRANTED, and that claim dismissed WITH PREJUDICE.

*D. State Defendants' other requests to dismiss*

74. In addition to moving for dismissal of Plaintiff's breach of contract and declaratory judgment claims, State Defendants also seek dismissal of any claims Plaintiff makes for ownership or title in the *QAR*. (ECF No. 57 at pp. 7–8.) State Defendants note, for example, that Plaintiff purports to seek an alternative declaration that "title to *QAR* is vested in [Plaintiff]." (ECF No. 44 at ¶ 116.C.)

75. Plaintiff concedes it has no right to title in the *QAR* and states that it is not making a claim for ownership. (ECF No. 64 at p. 13.) Instead, Plaintiff alleges

that if the 2013 Settlement Agreement and 1998 Agreement are declared void, then Plaintiff should be entitled to a 75% interest in any treasure recovered from the *QAR* under the terms of the *QAR* Permit. (ECF No. 44 at ¶ 116.C; ECF No. 64 at pp. 13–15.) Plaintiff's claim must fail.

76.     First, the Court has dismissed Plaintiff's claims for declaratory judgment, including the claim for an alternative declaration that Plaintiff has title to the *QAR*. Accordingly, Plaintiff cannot recover any interest in the *QAR*'s treasure under its declaratory judgment claim.

77.     More importantly, as State Defendants contend, Plaintiff "irrevocably transferred" any such rights to State Defendants in the 1998 Agreement. (ECF No. 70 at p. 2.) The parties performed under the 1998 Agreement for approximately 15 years, and Plaintiff received consideration for disclaiming its rights to the *QAR*'s treasure. State Defendants' motion to dismiss regarding Plaintiff's claims for a declaration that Plaintiff has title or ownership in the *QAR* or that it should have a claim to 75% of the *QAR*'s treasure should be GRANTED, and those claims are dismissed WITH PREJUDICE.

78.     Defendant also seeks dismissal of any claims by Plaintiff for violation of its "intellectual property rights" outside of any rights allegedly granted by the 2013 Settlement Agreement or 1998 Agreement. (ECF No. 57 at pp. 18–19.) Plaintiff concedes that it raises no such claims. (ECF No. 64 at p. 22.) State Defendants' motion to dismiss regarding Plaintiff's claim for intellectual property rights outside of alleged

contract rights should be GRANTED, and that claim is dismissed WITH PREJUDICE.

79. Finally, State Defendants seek dismissal of any claims for fraud, bad faith, and civil conspiracy, citing to allegations in paragraphs 2, 10, 26, 28, 85, 91, and 94 in the Second Amended Complaint. (ECF No. 57 at p. 19.) Again, Plaintiff concedes that it is not making claims for fraud, bad faith, or civil conspiracy. (ECF No. 64 at p. 23.) State Defendants' motion to dismiss regarding Plaintiff's claims for fraud, bad faith, and civil conspiracy should be GRANTED, and those claims are dismissed WITH PREJUDICE.

*E. State Defendants' motion to strike*

80. State Defendants also move to strike certain allegations in the Second Amended Complaint pursuant to Rule 12(f). (ECF No. 57 at pp. 19–20.) The Court has dismissed all of Plaintiff's claims herein; therefore the motion to strike should be DENIED as moot.

THEREFORE, IT IS ORDERED that:

81. State Defendants' motion to dismiss Plaintiff's claims for breach of contract arising from the 1998 Agreement is GRANTED and the claims dismissed WITH PREJUDICE.

82. State Defendants' motion to dismiss Plaintiff's claim that DNCR breached the 2013 Settlement Agreement by violating media and promotional rights granted to Plaintiff in the Agreement is GRANTED, and that claim dismissed WITHOUT PREJUDICE.

83. State Defendants' motion to dismiss Plaintiff's claim that DNCR breached the 2013 Settlement Agreement by failing to renew the *El Salvador* permit is GRANTED, and that claim dismissed WITH PREJUDICE.

84. State Defendants' motion to dismiss Plaintiff's claim for declaratory relief in Paragraph 116.A of the Second Amended Complaint is GRANTED, and that claim dismissed WITH PREJUDICE.

85. State Defendants' motion to dismiss Plaintiff's claim for declaratory relief in Paragraphs 116.B, C, D, and E of the Second Amended Complaint is GRANTED, and that claim dismissed WITHOUT PREJUDICE.

86. FQAR's motion to dismiss Plaintiff's claim that FQAR tortiously interfered with the 1998 Agreement and the 2013 Settlement Agreement should be GRANTED, and that claim dismissed WITH PREJUDICE.

87. State Defendants' motion to dismiss regarding Plaintiff's claims for a declaration that Plaintiff has title or ownership in the QAR or should have a claim to 75% of *QAR's* treasure is GRANTED, and that claims are dismissed WITH PREJUDICE.

88. State Defendants' motion to dismiss regarding Plaintiff's claims for intellectual property rights outside of alleged contract rights is GRANTED, and that claim is dismissed WITH PREJUDICE.

89. State Defendants' motion to dismiss regarding Plaintiff's claims for fraud, bad faith, and civil conspiracy is GRANTED, and the claims are dismissed WITH PREJUDICE.

90.    State Defendants' motion to strike certain allegations in the Second Amended Complaint is DENIED as moot.

This the 12th day of October, 2017.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Casess